Glenn E. BRAS, Petitioner,

v.

FIRST BANK & TRUST COMPANY OF SAND SPRINGS, Oklahoma, an Oklahoma Banking Corporation; W.E. Harvey; Clark Walton; the Estate of Jason V. Ott, Deceased; and Prescott, Wright, Snider Company, a Missouri Corporation, Respondents.

No. 55650.

Supreme Court of Oklahoma.

July 16, 1985.

Rehearing Denied April 21, 1987.

Rhodes, Hieronymus, Jones, Tucker & Gable by Richard M. Eldridge, Tulsa, for petitioner.

Chapel, Wilkinson, Riggs, Abney & Henson by John J. Ramsay and Stephanie L. Jones, Tulsa, for respondents First Bank & Trust Co. of Sand Springs and Clark Walton.

HODGES, Justice.

On May 26, 1976, Glenn E. Bras (petitioner or Bras) obtained an unsecured loan in the amount of $240,000 from First Bank & Trust Company of Sand Springs, Oklahoma (respondent or First Bank), for which sum he executed a promissory note. The single payment loan was made on a demand basis, with a maturity date of July 26, 1976, if demand was not made. Bras made a deferral payment on or about July 28, 1976 to defer the maturity date of the loan for an additional period of time, if there was no demand made. On August 23, 1976, First Bank demanded payment of the note with interest. Bras did not repay the note and on October 15, 1976, First Bank filed suit to recover on the note in the District Court of Tulsa County, Case No. C-76-2165. Bras asserted in his answer the affirmative defense that he was only an accommodation maker on the note. In his amended answer he alleged that because of self-dealing by the Chairman of the Board of First Bank, Jason V. Ott, the note was illegal and unenforceable.

In June of 1977, summary judgment was granted to First Bank against Bras, in the amount of $261,304.32 and attorney's fees in the amount of $5,000. Petitioner did not appeal.

Thereafter Bras filed two separate law suits. On November 9, 1977, Bras filed Case No. C-77-2386 in the District Court of Tulsa County to vacate the judgment in Case No. C-76-2165 on grounds of newly discovered evidence. Such new evidence consisted of the testimony of a trust officer for the administrator of Ott's Estate to the effect that he had been informed by a third party that First Bank had received certain funds out of the proceeds of the loan. An affidavit of the trust officer stating such was attached to the petition to vacate. Bras asserted two new defenses as a result of the newly discovered evidence: (1) that the prior judgment was based on an illegal and unenforceable transaction, and (2) that First Bank's judgment was based upon a note which must fail for lack of consideration.

On July 31, 1978, the trial court dismissed this case when it sustained First Bank's demurrer which alleged that the petition failed to allege facts sufficient to modify or vacate the prior judgment and the action was not maintainable because the petition was not verified. Upon appeal, the Court of Appeals, Division No. 1, affirmed such order.

On October 25, 1977, petitioner filed another suit, Case No. CT-77-870, the case which is presently before this Court, against First Bank; W.E. Harvey, President; Clark Walton, Executive Vice President; The Estate of Jason V. Ott; and Prescott, Wright, Snider Co., in which he claims that the named defendants participated in a conspiracy to defraud him in connection with the procurement and execution of the $240,000 note, and that in addition, they individually defrauded him. Petitioner seeks $300,000 actual damages and $1,000,000 punitive damages.

Bras alleges in his petition that on May 25, 1976, Ott, then principal owner and Chairman of the Board of First Bank, contacted Bras' wife by telephone requesting them to meet him at the offices of First Bank. On May 25, 1976, Bras and his wife met with Ott in the office of Harvey and at such time Ott explained that he had an investment opportunity and needed $240,000 for 60 days. Thereafter, Bras completed the documents for an unsecured loan in the amount of $240,000 from First Bank and Ott further explained that Ott would repay the loan out of First Bank funds. Mr. and Mrs. Bras and Ott then went to dinner and at such time Bras tendered a check to Ott made payable to Prescott, Wright, Snider Co. (Prescott), a banking brokerage house wholly owned by Ott. On June 3, 1976, Bras received from the brokerage house a statement which reflected that Bras had an interest in certain shares of stock. Bras further alleges that on June 30, 1976 Ott tendered to Bras $5,000 with which to pay the interest due on the note. Then on July 28th Bras received from respondent Walton a letter per Ott's instruction enclosing a deferral agreement and disclosure statement extending the payment from July 26, 1976 until December 6, 1976. Bras maintains he signed the agreement.

On August 9, 1978, the trial court awarded a default judgment against Prescott in favor of Bras. The trial court found Prescott conspired with the other named defendants to defraud Bras and Prescott was jointly and severally liable for the damages to Bras as a result of the fraudulent scheme.

On August 10, 1978, First Bank and Walton filed a demurrer alleging that the judgment in Case No. C–76–2165 was "res judicata" and that petitioner was barred from bringing the instant action under the doctrine of "estoppel by judgment." Respondents further allege the sustention of First Bank's demurrer in Case No. C–77–2386 to vacate judgment further substantiated the judgment rendered in Case No. C–76–2165.

Upon petitioner's attorney taking the deposition of respondent Harvey on February 5, 1980, Bras discovered the existence of an alleged suicidal tape recording dictated by Ott and addressed to Harvey, then president of First Bank. Harvey stated that on August 11, 1976, he had received a telephone call advising him of the death of Ott and the tape recording left to him by Ott which revealed that Ott purportedly defrauded Bras on the loan and that Ott actually received all of the loan proceeds. The transcript of the tape reflects that Ott stated:

> "I received all the proceeds of the funds, committed fraud to him, Glen [sic] Bras, by inducing him to buy some bank stock and paid the interest on the loan with a $5,000.00 check. I am sure he cashed the check and then paid Sand Springs [Bank]."

On August 10, 1976, Ott committed suicide apparently shortly after dictating the tape. Harvey received the tape on or about August 12, 1976, before First Bank filed Case No. C–76–2165 against Bras. Harvey's deposition testimony reflects that he apprised the Board of Directors of the information in the tape before Case No. C–76–2165 was initiated by First Bank against Bras.

Petitioner alleges Harvey, as a representative of First Bank, had knowledge of the fraud committed by Ott and thus defrauded petitioner, which fraud is imputable to First Bank. Petitioner alleges a fraudulent scheme involving respondents whereby Bras was induced to obtain a loan that would be repaid by First Bank's agent out of First Bank's funds.

On July 18, 1980, the trial court sustained the demurrer of First Bank and Walton on the basis that the issues raised by Bras were the identical issues adjudicated in Case No. C–76–2165 which arose from the same or similar circumstances, and thus, determined the suit was barred by "res judicata." The trial court dismissed the action. Additionally, the court ordered the Motion for Summary Judgment on behalf of Bras and the Motion to Quash on behalf of Harvey rendered moot by virtue of the sustention of the demurrer. The Court of Appeals, Temporary Division No. 168, affirmed the trial court but held that

petitioner was barred by "collateral estoppel," rather than res judicata, from litigating the matter as the issue of legality of the transaction had already been determined by the summary judgment in Case No. C–76–2165. It is from that judgment of the Court of Appeals that we grant certiorari.

The issues before this Court are whether the doctrine of estoppel by judgment was properly raised by respondents in their demurrer and whether the Court of Appeals correctly applied the doctrine of collateral estoppel.[1]

Before examining the principal issues presented for our determination, we must address the proper legal theory applicable to this case. As noted above the trial court couched the preclusion of issues as one of "res judicata;" whereas, the appellate court denominated it "collateral estoppel." In former Case No. C–76–2165, the cause of action was based on default in payment of the note and for collection of said indebtedness. In the present case the cause of action is for damages for fraud. It is apparent the two actions were upon different causes of action. The questions presented in this case deal with collateral estoppel and not res judicata.

Petitioner argues that the Court of Appeals erroneously raised *sua sponte* the doctrine of collateral estoppel. We find this argument unpersuasive. Both the trial court and the appellate court determined that the issues raised in this case are the identical issues adjudicated in the former case. Consequently, the Court of Appeals based its decision on a theory raised in the trial court notwithstanding inconsistent references to the terms "res judicata," "estoppel by judgment," or "collateral estoppel."

■ The doctrine of res judicata must be affirmatively pleaded and cannot be raised by general demurrer. *Whitson v. City of Pauls Valley*, 182 Okl. 306, 77 P.2d 711, 712 (1938). It follows therefrom that the related doctrine of estoppel by judgment must likewise be affirmatively pleaded. Respondents First Bank and Walton correctly contend their special demurrer which raises the doctrine of estoppel by judgment is proper because Bras' petition shows on its face potential questions as to the trial court's jurisdiction of this action by making specific reference to the former judgment on the note rendered in Case No. C–76–2165. *Bronson v. Reed*, 167 Okl. 447, 30 P.2d 459, 460 (1934). It is our opinion the doctrine of estoppel by judgment was properly raised by the special demurrer of respondents in this particular instance.[2]

Having addressed the first issue we turn now to the applicability of the doctrine of estoppel by judgment to the facts presented herein.

■ The doctrine of estoppel by judgment requires that there be an identity of parties and subject matter. *Laws v. Fisher*, 513 P.2d 876, 877 (Okla.1973). It is undisputed that the identity of the parties requirement is met. We will, therefore, examine the second requirement for the application of the doctrine.

■ The point of our inquiry is to determine whether the particular issues in the present case were actually determined in

---

1. The doctrine of collateral estoppel or "estoppel by judgment" is to be distinguished from the related doctrine of res judicata. The parties herein concede that the cause of action in the instant case differs from that in the prior case in which there was a summary judgment. Res judicata is, therefore, inapplicable.

    "These terms [estoppel by judgment and res judicata] are sometimes used interchangeably, but in Oklahoma, res judicata bars a second action where the parties and the two causes of action are the same. Where the two causes of action are different, the litigants are estopped by judgment to deny only those matters which are common to both suits. Estoppel by judgment is applicable when the second suit is between the same parties but on a different

cause of action." *Wabaunsee v. Harris*, 610 P.2d 782, 785 (Okla.1980). *See also, Veiser v. Armstrong*, 688 P.2d 796, 800 n. 9 (Okla.1984). The above formulation of the law of estoppel by judgment is consistent with that expressed in Restatement (Second) of Judgments § 27 (1982):

    "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, then determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

2. This case preceded the adoption of the new pleading code.

former Case No. C–76–2165. *Runyan v. City of Henryetta,* 321 P.2d 689 (Okla. 1958). If any of the issues actually adjudicated in the instant case were essential to the prior judgment, then petitioner was properly estopped to challenge them collaterally. *Oklahomans for Life, Inc. v. State Fair of Okl.,* 634 P.2d 704, 707 (Okla.1981); *Lewis v. Aubrey,* 404 P.2d 1005, 1008 (Okla.1965).

We find this case closely analogous to the recent case of *Oklahomans for Life, supra.* In that case we held that a judgment rendered in an earlier action did not raise a bar to the litigation of issues that were not determined by that earlier judgment. In *Oklahomans for Life* an anti-abortion corporation first sued in federal court in a civil rights action, alleging that the Fair, acting under color of state law, had unlawfully deprived it of its civil rights by removing certain literature and displays from booths rented to the corporation. The federal court dismissed the suit finding that the Fair had neither acted under color of state law nor unlawfully deprived the corporation of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress. Thereafter, the corporation sued in state court alleging violations of state and federal civil rights by conspiracy between the Fair and others and that the Fair had converted the corporation's property and breached its lease agreement. We found the corporation was barred from challenging violations of its federal rights because of the prior federal court judgment, but could properly litigate its state civil rights claims and its claims of conversion and breach of contract.

█ In the case presently before us, we find petitioner was improperly barred from prosecuting his claim for conspiracy to commit fraud. In prior Case No. C–76–2165 in which summary judgment was entered, First Bank alleged that Bras was primarily liable on the note and that he had failed to repay the debt when it came due. Bras generally denied the allegations, denied primary liability and affirmatively alleged in his amended answer the following:

"2. That Plaintiff bank has made claim upon the bonding company for payment of said note, due to the illegality of the self-dealing transaction involved herein.

"3. That said transaction was contrived, aided, and abetted by the Chairman of the Board of said bank, Jason Ott, solely for his own personal use and benefit, and not for the use and benefit of the Defendant, Glenn E. Bras.

"4. That the loan which is the subject of this litigation was an illegal loan, the same being wholly unknown to Defendant, and due to said illegality is wholly unenforceable."

These allegations raise a defense of illegality to the validity of the note based upon the self-dealing transaction. Illegality is a commonly recognized defense to such a contract. The summary judgment, then, necessarily determined that petitioner was primarily liable on the note and that such note was not illegal because of any "self-dealing."

█ Unlike the former action, the present one contains allegations of conspiracy to commit fraud. We find no common elements between the fraud action, a tort claim involving misrepresentation, and the contract action in which illegal self-dealing was raised as a defense to the validity of the note. The elements of actionable fraud are as follows: (1) That defendant made a material representation; (2) that it was false; (3) that the defendant had knowledge of its falsity or ignorance of its truth when he made the statement; (4) that defendant intended that it should be acted on by plaintiff in the manner reasonably contemplated; (5) that plaintiff relied on its truth; (6) that plaintiff thereby suffered injury. *Nutt v. Carson,* 340 P.2d 260, 263 (Okla.1959) (quoting *Littlefield v. Aiken,* 130 Okl. 142, 265 P. 1054 (1928)). Nowhere in the first action were any of these elements put into issue and, therefore, could not have been determined by the rendition of that judgment. The fraud claim did not arise until the first judgment was rendered because only until such time did petitioner allegedly suffer injury. Petitioner asserts the prior judgment rendered in Case No. C–76–2165 was tainted by fraud and such

**334**

fraud gives rise to the present suit. He alleges that at the time of the prior suit he did not know, or had reason to suspect, First Bank had possession of the tape recording made by Ott and addressed to Harvey in which Ott stated he had committed fraud upon petitioner. Nor did petitioner suspect that Harvey or any other officer of First Bank would have the tape or withhold it from evidence. Hence, petitioner should not have been estopped to raise these issues in the collateral suit.

The Court of Appeals erroneously characterizes the present fraud suit as raising a claim of illegality of the note. The pleadings in the former case reflect that illegality of the loan was based on self-dealing. Therefore, even if this were a correct understanding of the pleadings in the instant case, it would not necessarily follow that illegality based on self-dealing should preclude raising illegality of a contract due to conspiracy to defraud. Nevertheless, the fact of fraudulent misrepresentation was not determined by former Case No. C–76–2165; thus, petitioner is not barred from raising it as an issue in this latter fraud suit for damages.

The trial court improperly sustained the demurrer of respondents to Bras' petition and improperly dismissed the action on the basis of res judicata or estoppel by judgment. The appellate court likewise erred in affirming that judgment.

CERTIORARI GRANTED. THE OPINION OF THE COURT OF APPEALS VACATED IN ITS ENTIRETY. THE JUDGMENT OF THE TRIAL COURT IS REVERSED AND THE CAUSE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in part and dissents in part.