Scott HILDEBRAND, individually and as father and next friend of Lacie Hildebrand, and Phyllis Richards, individually and as mother and next friend of Tracie Richards, Appellees,

v.

Carl Norman GRAY, Defendant,

American Capital Indemnity Corporation, an Oklahoma insurance company, by and through its receiver, Oklahoma Property and Casualty Insurance Guaranty Association, Appellee,

and

Mid–Continent Casualty Company, Appellant.

No. 79512.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 23, 1993.

Richard D. Gibbon, Tulsa, for appellant.

Daniel M. Davis, Roger B. Hale, Oklahoma City, for appellees, Hildebrand and Richards.

Brad Smith, Tulsa, for appellee, American Capital Indemnity/Oklahoma Property and Cas. Ins. Guar. Ass'n.

## MEMORANDUM OPINION

JONES, Presiding Judge:

Appellant, Mid–Continent Casualty Company [Mid–Continent], seeks reversal of summary judgment rendered against it in a garnishment proceeding by Appellees, Scott Hildebrand and Phyllis Richards. We hold the trial court erred in applying the doctrines of issue preclusion to deprive Appellant of an opportunity to litigate its defenses against the garnishment.

Hildebrand and Richards commenced this action to recover for injuries suffered by them and their minor children when Carl Norman Gray crashed his car into the Richards's house. The crash occurred at the conclusion of a high-speed chase following the unsuccessful attempt by two Ottawa County deputy sheriffs to serve an arrest warrant on Gray.[1]

Hildebrand and Richards chose to cast their tort action in negligence. The case proceeded to jury trial, but the jury merely fixed damages, the court having directed a verdict in favor of Hildebrand and Richards on negligence. They subsequently filed post-judgment garnishment against Mid–Continent, Gray's liability insurer. The insurer filed its answer denying any indebtedness to Gray, and the garnishors filed their election to take issue with the denial.

Garnishors moved for summary judgment. The evidentiary materials attached to the motion consisted of several items from the underlying suit—(1) the "partial" judgment; (2) the jury instructions; (3) the pre-trial order; and (4) Gray's answers to interrogatories, to which were attached a copy of the Mid–Continent policy. Mid–Continent responded with an affidavit from one of the deputies who had tried to arrest Gray, that in his opinion Gray had intentionally aimed his car at the Richards's house. Mid–Continent also asked the trial court to take judicial notice of the criminal charges filed against Gray following the crash. (Gray had been charged with nine counts of assault and battery with a dangerous weapon[2], and pleaded guilty to all nine.)

The trial court initially granted summary judgment in favor of the garnishors, but garnishors moved to vacate the judgment because it did not specify an amount, but rather ordered Mid–Continent only to pay such sums as were due on the liability policy. Mid–Continent agreed to the garnishors' request to vacate the judgment.

After new attorneys became involved in the case for garnishors, another motion for summary judgment was filed, the body of which was for all practical purposes identical to the first motion.[3] Although the second

---

1. Gray was charged with raping his step-daughter. The deputy had come to the Richards's home to serve Gray. Mrs. Richards pointed him out to the deputy, and Gray then took flight.

2. The nine assault and battery counts corresponded to the number of people in the Richards's house when Gray crashed his car into it.

3. The second motion differed from the first motion in only two respects: First, it recited the prior ruling on the first summary judgment motion, and subsequent vacation of that ruling. Second, an additional paragraph was inserted in which Appellees stated, "[A]ll parties have agreed that no matter the ultimate outcome of

motion referred to exhibits, none were attached. Mid–Continent responded, attaching a copy of its previous response, including the deputy's affidavit. The trial court again granted summary judgment for garnishors, and this appeal followed.

Mid–Continent's seeks to defend the garnishment action by asserting the following exclusion under the liability coverage of its insurance policy:

> This policy does not apply under Part I:
>
>    \*    \*    \*    \*    \*    \*
>
> (b) to bodily injury or property damage caused intentionally by or at the direction of the insured;
>
>    \*    \*    \*    \*    \*    \*

[Rec. 63.] In its response to the motion for summary judgment, Mid–Continent asked the trial court to take judicial notice of the earlier criminal proceedings against Gray, in which Gray was accused of wilfully and intentionally committing an assault and battery upon the occupants of the Richards house, "with the unlawful and felonious intent then and there to do [them] great bodily harm" [Rec. 185–87], the charges to which he had pleaded guilty. Gray entered his guilty plea on September 23, 1987, *over two months before Appellees sued him for negligence.* [Rec. 200.]

■ "Negligence" is defined as a failure to exercise ordinary care to avoid injury to another's person or property, i.e., failure to do what an ordinarily prudent person would do in the same or similar circumstances, or doing what an ordinarily prudent person would not do under such circumstances. *See, e.g., Guegel v. Bailey,* 199 Okl. 441, 186 P.2d 827, 829 (1947). We note that juries in Oklahoma may be instructed on both negligent and intentional conduct in the same case. The uniform instructions adopted by the Supreme Court contemplate a finding of negligence by the jury and subsequent award of punitive damages based on the malicious—

i.e., intentional—conduct. *See* Oklahoma Uniform Jury Instructions: Civil No. 5.5 at 59–60, No. 9.2 at 91–92 (2nd ed. 1993).

■ Garnishment proceedings are distinct from the underlying action, although the liability established in the underlying action is prerequisite to proceeding against an insurer by garnishment. In *Henderson v. Eaves,* 516 P.2d 270 (Okla.1973), the garnishor's underlying judgment recited that the defendant [insured] had been served by leaving a copy of the summons with his mother at defendant's usual place of residence. The plaintiff argued the recital estopped defendant's insurer from claiming in a subsequent garnishment action that the defendant did not, in fact, reside at the address where the summons was served. The court disagreed, holding that the fact of the defendant's residence was not "material" for purposes of the underlying action. In so holding, the court stated the rule which both parties to the present appeal have cited in support of their respective positions:

> One who is required either by law or contract to protect another from liability is bound by the result of the litigation to which such other is a party, provided the former had notice of such litigation and an opportunity to control its proceedings; but a judgment against a party indemnified is conclusive in a suit against his indemnitor only as to the material facts therein established.

*Henderson v. Eaves,* 516 P.2d at 273, quoting from *United States Fidelity & Guaranty Co. v. Dawson Produce Co.,* 180 Okl. 119, 68 P.2d 105, 107 (1937). *See also Greene v. Circle Insurance Co.,* 557 P.2d 422, 424 (Okla.1976).

These cases recognize that such contractual obligation as may exist between the insured and insurer is not and cannot be the subject of the tort suit by third parties against an insured. Appellees suggest, somewhat disingenuously we think, that Mid–Continent could have protected its interests by employing separate counsel[4] in

---

the case at bar, an Appeal will be made to the Oklahoma Supreme Court for redetermination. This being the case, Plaintiffs submit that this Motion for Summary Judgment be GRANTED in order to save Judicial time and monies [*sic*] ..." [Rec. 123.]

4. By this, Appellees acknowledge that Mid–Continent had already hired counsel to represent Gray, as required by Gray's insurance policy.

the underlying case. Alternatively, Appellees suggest Mid–Continent should have denied any defense to Gray, thereby preserving, in their view, an opportunity to raise its garnishment defense based on the "intentional act" exclusion.

▮ The mere fact of garnishment does not alter or enlarge the rights as against the garnishee. The judgment creditors, Appellees here, could not acquire by their tort judgment any greater rights than the insured, Gray, possessed. *Moral Insurance Co. v. Steves,* 208 Okl. 529, 257 P.2d 836, 839 (1953); *Ray v. Paramore,* 170 Okl. 495, 41 P.2d 73, 76 (1935). A judgment creditor stands in the shoes of the judgment debtor *vis a vis* rights against any liability owed to the judgment debtor by the garnishee. *Culie v. Arnett,* 765 P.2d 1203, 1205 (Okla.1988).

In *Greene,* the insurer argued in a garnishment action that the statute of limitations had run on the plaintiff's cause of action. The court held that the insurer could not re-litigate any defense which should have been raised in the main action. *Greene,* 557 P.2d at 424. Of course, the insurer here does not assert any defense which could have been raised in the main action. Notwithstanding Appellees' suggestions in their brief [5], there was no realistic way for Gray to assert his conduct was intentional (and therefore not negligent) in the underlying action.

▮ Here, we are presented an issue of "collateral estoppel"—also known in our jurisprudence as "estoppel by judgment"—as opposed to res judicata. As stated by the Oklahoma Supreme Court in *Schneider v. Republic Supply Co.,* 123 Okl. 98, 252 P. 45, 47 (1926):

> For a judgment to be an estoppel, there must be an identity of parties, as well as of subject-matter; and the parties between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered in the

same capacities and in the same antagonistic relation, or in privity with the parties in such former action.

*See Laws v. Fisher,* 513 P.2d 876, 877 (Okla. 1973); *Smittle v. Eberle,* 353 P.2d 121, 122–23 (Okla.1960). While res judicata acts as a bar to re-litigation of the same cause of action between the same parties, the bar of collateral estoppel operates with respect to a different cause of action, in which there is one or more issues which were actually litigated in the former action. *Wabaunsee v. Harris,* 610 P.2d 782, 785 (Okla.1980); *see Bras v. First Nat. Bank & Trust Co.,* 735 P.2d 329, 332–33 (Okla.1985); *State ex rel. Trimble v. Kindrick,* 852 P.2d 758, 760 (Okla. Ct.App.1992).

In the present case, we have neither an identity of parties nor an identity of issues. In the context of the general rule stated in *Henderson v. Eaves,* it remains only to determine whether Mid–Continent is nonetheless bound as being in privity with Gray. We answer that question in the negative. Mid–Continent's ¨involvement in the main action against Gray was limited to hiring an attorney for him.[6] That attorney, however, did not represent Mid–Continent, nor seek to advance the insurer's interests. Indeed, in some critical respects, the interests of Gray and Mid–Continent were antagonistic. For example, the insurer's pecuniary interests would doubtless have been served if Gray defended the main action by claiming his acts were intentional, because Mid–Continent might thereby have been relieved by its policy exclusion from indemnifying Gray against the tort judgment. But Gray (and, according to the applicable rules of ethical conduct, his insurer-retained attorney) were obliged to defend *Gray's* interests, including preservation of whatever rights of insurance which they thought reasonably available to Gray.

▮ In order for the "privity" rule to apply, the party in privity must actually have

---

5. We find it incredible to suggest, as Appellees do, that Gray could or should have defended the negligence action by claiming he crashed his car intentionally, but not negligently. By doing so, Gray would have been depriving himself of the only insurance coverage available to him. Thus, accepting Appellees' argument would require us

to indulge the assumption that Gray should have adopted a position directly contrary to his pecuniary interest.

6. According to the briefs, Mid–Continent defended Gray under reservation of rights.

the same interest, character, or capacity as the party against whom the prior judgment was rendered. However, the scope of who qualify as "privies" varies according to the circumstances of the particular case. "In general, it may be said that such privity involves a . person so identified in interest with another that he represents the same legal right." 46 Am.Jur.2d, Judgments § 532 at 683 (1969). If the interests of the two parties are in conflict in the main action, they are not privies within the meaning of the rules of res judicata and collateral estoppel. *See id.,* at 686.

These principles are now incorporated in the Restatement (Second) of Judgments § 58 (1982):

> (1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the insured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:
>> (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and
>> (b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee *as to which there was no conflict of interest between the indemnitor and the indemnitee.*
> (2) A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not.

Clearly, there is in this case a "conflict of interest" as defined in § 58(2): Appellees could have pressed a claim against Gray for either intentional assault and/or battery,

or negligence. A favorable judgment on either of the former theories, by definition, would be excluded from coverage under Mid-Continent's policy; while a judgment for negligence would not. In short, the mere fact that the insurer may have some remote connection with the main negligence action against its insured, because it has retained counsel to defend the insured, does not estop the insurer from subsequently raising a policy defense to subsequent garnishment proceedings by a successful plaintiff in the main action.

The trial court's summary judgment against Mid-Continent is REVERSED, and this case is remanded to the trial court for further proceedings in conformity with the views expressed in this opinion.

REVERSED AND REMANDED.

HANSEN, C.J., and ADAMS, J., concur.