**KIOWA TRIBE OF OKLAHOMA, Individually as Parens Patriae to Seth Allan Lewis, Plaintiff-Appellant,**

v.

**Robert LEWIS and Diana Lewis, Defendants-Appellees.**

**No. 83–2515.**

United States Court of Appeals, Tenth Circuit.

Nov. 21, 1985.

Bertram E. Hirsch, Floral Park, N.Y., for plaintiff-appellant.

Robert L. Howard (Susan Lee Smith with him on briefs) of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants-appellees.

Sue Wycoff and Susan Work Haney, Oklahoma Indian Legal Services, Oklahoma City, Okl., and Robert T. Anderson, Native American Rights Fund, Boulder, Colo., filed an amicus curiae brief on behalf of the Kickapoo Tribe of Oklahoma, Comanche Indian Tribe, Seminole Nation of Oklahoma, Rosebud Sioux Tribe of S.D., Iowa Tribe of Kan. and Neb., Coeur D'Alene Tribe, Menominee Indian Tribe of Wis., Sisseton-Wahpeton Sioux Tribe, Kickapoo Tribe of Kan., and the Association of Village Council Presidents of Alaska.

Barry Benefield, Doug Parr, and Albert Ghezzi, Native American Center Legal Program, Oklahoma City, Okl., filed an amicus curiae brief on behalf of the Association of American Indian and Alaska Native Social Workers, Inc., and the Oklahoma Indian Child Welfare Assn.

Roy Maurer, National Director, North American Council on Adoptable Children, Washington, D.C., filed an amicus curiae brief on behalf of the North American Council on Adoptable Children.

Robert R. Arnold of Bachmann, Arnold, Graybill & Craig, Wichita, Kan., filed an amicus curiae brief on behalf of T.M.L., the biological mother of Seth Allan Lewis.

Before BARRETT and LOGAN, Circuit Judges, and FINESILVER, District Judge.[*]

LOGAN, Circuit Judge.

This is an appeal by the Kiowa Tribe of Oklahoma from an order of the district court denying its request for declaratory and injunctive relief under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901–1934. The Tribe collaterally attacks a Kansas state court judgment that allowed a non-Indian couple to adopt a child the Tribe contends is an Indian subject to the ICWA requirements. We must consider on appeal the preclusive effect, under the doctrines of res judicata or collateral estoppel, of the state court litigation under the particular facts of this case. We also consider whether the district court erred when it ordered the Tribe to pay the defendant adoptive parents' attorney's fees.

The child involved here was born out of wedlock in Wichita, Kansas, in January 1981. His biological father is Carmon Perciado, a five-eighths blood Indian who is an enrolled member of the Kiowa tribe. The child's mother is a non-Indian, who on the date of birth executed a voluntary consent to the baby's adoption expressly limited to defendants Robert and Diana Lewis. The Lewises on that same day filed a petition for adoption in a Kansas state court and were immediately given temporary care and custody of the child. They removed the child from the hospital and have had custody since. The child's biological father, who was incarcerated in a state penal institution at the time of the child's birth, never saw the child before the Lewises took custody. He was notified of the adoption proceedings, however, and was represented by counsel and participated therein.

During the course of the adoption proceedings the state court became aware of the possibility that the ICWA might apply. It recessed the proceeding so that the Kiowa Tribe could be notified. The Tribe filed a motion to intervene. It also enrolled the child as a member of the Tribe over the objection of the biological mother. After considering briefs filed by the Tribe and the Lewises, the state court held that the ICWA did not apply and denied the Tribe's motion to intervene on that basis. The court then found Perciado to be an unfit parent, severed his parental rights, and granted the Lewises' adoption petition.

---

[*] Honorable Sherman G. Finesilver, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

The Tribe appealed the denial of its motion to intervene to the Kansas Supreme Court. That court allowed written briefs and heard oral argument by counsel for the Tribe and the other interested parties. The Kansas Supreme Court affirmed the district court's judgment that the Act was inapplicable. *In re Adoption of Baby Boy L,* 231 Kan. 199, 643 P.2d 168 (1982). The Tribe did not seek review of that decision in the United States Supreme Court.

The Tribe then filed the instant action against the Lewises in the United States District Court for the District of Kansas.[1] That court dismissed the suit on the ground that res judicata and collateral estoppel precluded relitigating the ICWA's applicability. The court also held that the action was frivolous and ordered the Tribe to pay the Lewises' attorney's fees.

## I

### A

■ By statute, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered. *See* 28 U.S.C. § 1738; *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). We thus must consider first the issue and claim preclusion rules that the Kansas courts apply, *see Marrese v. American Academy of Orthopaedic Surgeons,* — U.S. —, ———–——, 105 S.Ct. 1327, 1330–35, 84 L.Ed.2d 274 (1985), because the Lewises, defendants in both actions, assert that the Kansas judgment precludes relitigation of the question of the applicability of the ICWA.

1. Shortly after the Kansas Supreme Court decision the Tribe filed a suit against the Lewises in the United States District Court for the Western District of Oklahoma, seeking the same relief sought in the instant case. That court dismissed the action for lack of personal jurisdiction over the Lewises.

2. "Identity" of the thing sued for does not require an identically worded complaint. One need only plead in "basically the same manner."

■ We believe the doctrine of res judicata precludes the Tribe from relitigating its claims in this new action. The Kansas courts invoke the res judicata doctrine at least when the following criteria are satisfied: "(1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." *Adamson v. Hill,* 202 Kan. 482, 449 P.2d 536, 541 (1969).

We believe there is here identity in the thing sued for—in both suits the Tribe primarily contests its right to intervene under the ICWA. The Tribe is again suing to prevent the termination of its rights over the child it claims is an Indian subject to the ICWA.[2] There is also identity of the cause of action; in both cases the Tribe is seeking to invoke the ICWA. The other two criteria also are present; in both suits the adoptive parents and the Tribe are parties and are aligned as adversaries. There is no material difference in the "quality" of the parties to the two actions. The same facts form the basis of both suits and plaintiff essentially seeks identical relief in both cases: to invoke the Indian Child Welfare Act and prevent the adoption of this baby.

We conclude that the Kansas courts would consider the Tribe's suit here barred by collateral estoppel.

### B

The Tribe nevertheless contends that the Kansas Supreme Court decision lacks preclusive effect because the Kansas courts failed to follow the ICWA's procedural standards.[3] The Kansas Supreme Court

*See Kenoyer v. Board of Barber Examiners,* 176 Kan. 424, 271 P.2d 267, 269 (1954).

3. The ICWA establishes "minimum Federal standards and procedural safeguards in State Indian child custody proceedings designed to protect the rights of the child as an Indian, the Indian family and the Indian tribe." H.R.Rep. No. 1386, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7530, 7541; *see also* 25 U.S.C. § 1902. 25 U.S.C. §§ 1911–1922 define some of those minimum standards.

did apply federal law in its holding that the ICWA's procedures, including those allowing an Indian tribe to intervene in a child custody proceeding, were inapplicable to the facts of this case. *See Baby Boy L,* 231 Kan. at 206–07, 643 P.2d at 175–76. It concluded that Congress did not intend in the ICWA "to dictate that an illegitimate infant who has never been a member of an Indian home or culture, and probably never would be, should be removed from its primary cultural heritage and placed in an Indian environment over the express objections of its non-Indian mother." *Id.*

■ It is not enough here for the Tribe to predicate a due process violation on the argument that the Kansas courts did not follow the ICWA's procedures such as letting the Tribe intervene. Congress clearly anticipated that state courts might have to determine, in the first instance, whether the ICWA's terms should apply.[4] A state court determination that the ICWA does not apply is binding on us unless (1) it is "so fundamentally flawed as to be denied recognition under § 1738," *Kremer,* 456 U.S. at 480, 102 S.Ct. at 1897, or (2) unless Congress intended state court judgments concerning the ICWA's applicability to be excepted from § 1738's command of full faith and credit. We examine these questions in sequence.

■ In deciding whether the state courts' judgments were fundamentally flawed, we may only examine whether the state proceedings satisfied "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer,* 456 U.S. at 481, 102 S.Ct. at 1897. Nothing in the record before us indicates any due process violation in the state courts' determination of the *applicability*

of the ICWA. The Kansas trial court considered the issue when it entertained the Tribe's motion to intervene in the child custody proceeding. Prior to ruling on that motion, the trial court gave the Tribe a fair opportunity to present the argument for the ICWA's applicability. *See Baby Boy L,* 231 Kan. at 203, 643 P.2d at 173 (describing proceedings in trial court). After it lost that motion, the Tribe was able to present the same argument to the Kansas Supreme Court and was afforded all the procedural rights of any litigant before that court. The Kansas Supreme Court rejected the Tribe's argument for the ICWA's applicability after giving it extensive attention. *See id.* at 203–07, 643 P.2d at 174–78. The Kansas courts appear to have afforded to the Tribe all the requirements of due process in making their determination that the ICWA did not apply. The Tribe's due process argument based on the ICWA's specific procedures once the ICWA's terms are triggered has no force when a state court has determined the threshold question of the ICWA's applicability adversely to the Tribe and did not violate due process in making that decision. Such is the case here.

### C

The Tribe argues that even if 28 U.S.C. § 1738 would otherwise bar it from asserting its ICWA claims anew in federal court, Congress intended to create an exception to § 1738's rule of full faith and credit by the following statutory language:

"Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may

---

**4.** If the Tribe is claiming that federal courts should not give full faith and credit to the Kansas state courts' rulings under § 1738 because the Kansas courts lacked jurisdiction to render any judgment concerning the applicability of the ICWA, we reject that argument. The ICWA does not divest state courts of their jurisdiction over children of Indian descent living off the reservation. *See* H.R.Rep. No. 1386, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 7530, 7541. Indeed, Congress intended the ICWA to establish minimum procedural standards for state courts handling child custody proceedings involving Indian children. *Id.* The Tribe's argument that the Kansas courts failed to follow the ICWA's minimum procedural requirements does not implicate those courts' jurisdiction; instead, that argument suggests a due process violation that, if true, would divest those courts' judgments of any preclusive effect.

petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title."

25 U.S.C. § 1914. Sections 1911–1913 are the general substantive provisions of the Act. The Tribe emphasizes the "court of competent jurisdiction" language to support its claim that federal courts may independently consider the propriety of any judicial determination regarding the applicability of the ICWA.

The question before us is not whether the federal court is a "court of competent jurisdiction," entitled to protect an Indian tribe's interest in foster care placement or terminations of parental rights in Indian children in a case in which the tribe sought to assert its rights under the ICWA *before* it sought to intervene in the state proceeding. The question before us is not even whether the Tribe could have brought suit in federal court after the state district court denied it the right to intervene.[5] Rather, after its attempted intervention in the state court was denied because the court found the ICWA was inapplicable, the Tribe appealed that determination to the Kansas Supreme Court. There, after full consideration, briefing, and argument, it lost. The question before us is therefore whether the Tribe's taking an appeal to the state supreme court foreclosed the Tribe from relitigating in a later independent federal district court action.

■ We acknowledge the importance of the Tribe's interest, which was recognized by Congress through its enactment of the ICWA. But we do not agree with the Tribe's argument that 25 U.S.C. § 1914 makes inapplicable the full faith and credit provisions of 28 U.S.C. § 1738. The Supreme Court has emphasized that an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal. *Kremer*, 456 U.S. at

468, 102 S.Ct. at 1890. Nothing in the ICWA expressly creates an exception to § 1738, and we do not read § 1914 as implicitly authorizing federal courts to adjudicate custody of Indian children independently after a state court has rendered a final judgment, in litigation in which the interested Indian tribe has participated. This is a case like *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), in which the Supreme Court held that the only recourse of a litigant who took the state court route was to continue by an appeal or petition for certiorari to the United States Supreme Court, a course it did not take.

Congress intended the ICWA to set minimum standards and procedural safeguards for state child custody proceedings. *See* H.R.Rep. No. 1386, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad. News 7530, 7541. In setting such standards, Congress evidently believed that an Indian child's tribe should be involved in the process even when the proceedings are in state courts rather than tribal courts. *See, e.g.*, 25 U.S.C. §§ 1911(b), (c), 1912(a), 1915(c), 1919(a). Thus Congress clearly realized that state courts would continue to resolve some cases of Indian child custody. Section 1911(c) expressly gives the child's Indian tribe the right to intervene in state court proceedings involving the child's custody. We cannot read § 1914's reference to "any court of competent jurisdiction" as the type of clear and manifest authorization that federal courts need before they upset the ordinary principles of federal-state comity embodied in 28 U.S.C. § 1738 and the Full Faith and Credit Clause. It seems rather to state simply where such actions may initially be brought. Regardless of whether we agree with the Kansas Supreme Court's construction of the ICWA, here we must honor the judgment it has rendered on the subject.

**5.** The Tribe and the biological father did bring an action in the Kansas federal district court to enjoin the state proceedings before the state adoption order was entered. The district court denied relief on the ground that the case was mooted by the state court's prior determination that the ICWA did not apply. R. II, 42, 48. The Tribe took no appeal from the federal court ruling, but instead appealed the state court determination to the Kansas Supreme Court.

## II

The Tribe contends that tribal sovereign immunity bars the district court's award of attorney's fees against it. We do not decide that issue. Rather we reverse the district court's determination on a narrower ground also asserted by the Tribe. Apparently the district court based its award either on 42 U.S.C. § 1988, because the Tribe asserted one cause of action based upon the Civil Rights Act, or on the court's general power to discourage frivolous lawsuits. Although we have agreed with the district court's dismissal of the suit, we find the case to be neither "frivolous, unreasonable, or without foundation," as required before an attorney's fee award can be made under § 1988, nor brought in subjective bad faith, as required for an award under the general common law fee award power. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 419, 421, 98 S.Ct. 694, 699, 700, 54 L.Ed.2d 648 (1978). The question here of whether the ICWA, particularly § 1914, creates an exception from the normal issue or claim preclusion rules appears to be one of first impression, at least at the circuit level. First impression issues, if substantial, should not support an attorney's fee award against a losing plaintiff. *See id.* at 423–24, 98 S.Ct. at 701.

As evidence of the seriousness of the issue, we note that another federal district court in this circuit, in a somewhat different factual situation, found that it had jurisdiction under the ICWA after an Indian tribe had tried unsuccessfully to intervene in state court adoption proceedings. *See Kickapoo Tribe v. Department of Human Services*, No. 81–947–T, slip op. (W.D.Okla. Aug. 10, 1984), *appeal docketed*, No. 84–2279 (10th Cir. Sept. 18, 1984). We also note that at least one other state appellate court apparently has disagreed with the Kansas Supreme Court's decision on the merits of the applicability of the ICWA in an analogous case. *In re Appeal in Maricopa County Juvenile Action No. A-25525*, 136 Ariz. 528, 667 P.2d 228, 233 n. 5 (Ct.App.1983). We therefore reverse the award of attorney's fees.

In all other respects, the judgment is AFFIRMED.