53 F.3d 298
 63 USLW 2683
 COMANCHE INDIAN TRIBE OF OKLAHOMA, a federally recognized
Indian Tribe, Plaintiff-Appellee,
v.
Richard E. HOVIS, individually and as Judge of the District
Court of Kiowa County; Kiowa County District
Court, of Oklahoma, Defendants,
and
Rhonda Wahnee, Defendant-Intervenor-Appellant.
 Nos. 94-6166, 94-6167.
 United States Court of Appeals,
Tenth Circuit.
 April 18, 1995.
 
 Micheal C. Salem (Guy Hurst, Asst. Atty. Gen., Oklahoma City, OK, with him on the brief), of Salem Law Offices, Norman, OK, for defendant-appellant.
 Glenn M. Feldman of O'Connor, Cavanagh, Phoenix, AZ, for plaintiff-appellee.
 Before KELLY, BRIGHT* and BARRETT, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 Appellants (the District Court of Kiowa County, Oklahoma, Judge Richard E. Hovis, and intervenor, Rhonda Wahnee) appeal from the federal district court's entry of summary judgment in favor of the Comanche Indian Tribe of Oklahoma (the Tribe). See Comanche Indian Tribe of Oklahoma v. Hovis, 847 F.Supp. 871 (W.D.Okla.1994).
 
 
 2
 This case arose out of a jurisdictional dispute between the District Court of Kiowa County, State of Oklahoma (State Court) and the Comanche Tribal Children's Court (Tribal Court) regarding which court had jurisdiction to adjudicate a petition to terminate the parental rights of Rhonda Wahnee pursuant to the Indian Child Welfare Act (ICWA), 25 U.S.C. Secs. 1901-1963. A brief recitation of the facts material to our disposition follows.
 
 Facts
 A. 1985-1986
 
 3
 On October 15, 1985, Rhonda Wahnee (Rhonda), a non-Indian, filed for divorce from Stuart Wahnee (Stuart), an enrolled member of the Tribe, in State Court. At that time, Rhonda and Stuart had two children, Kristy and Shannon,[1] and were living in low-income HUD housing in Mountain View, Oklahoma, outside the Comanche reservation.
 
 
 4
 On January 24, 1986, Stuart and Rhonda signed a power of attorney giving Stuart's sister, Blanche Wahnee (Blanche), an enrolled member of the Tribe, custody of Kristy.
 
 
 5
 In May, 1986, the Assistant District Attorney for Kiowa County, Oklahoma, filed separate petitions on behalf of Shannon and Kristy to terminate Rhonda's parental rights in the State Court.[2] At the same time, the State Court entered a divorce decree granting Rhonda and Stuart a divorce while staying the determination of custody and child support until resolution of the pending juvenile proceeding regarding termination of Rhonda's parental rights. In this regard, we note that Sec. 1903(1) of the ICWA defining "child custody proceeding" does not include an award, in a divorce proceedings, of custody to one of the parents, see infra part I. 25 U.S.C. Sec. 1903(1); see also In re Q.G.M. 808 P.2d 684, 687-88 (Okla.1991).
 
 
 6
 On June 16, 1986, the State Court concluded that Kristy was a deprived child and ordered Rhonda to comply with the Service Plan filed with the order. The Service Plan established the requirements that Rhonda must fulfill in order to demonstrate to the State Court that she could provide a safe and stable home for Kristy.
 
 B. 1987
 
 7
 On May 27, 1987, at a hearing in State Court, the State Court noted that the Tribal Court wished to assume jurisdiction over the termination of parental rights proceeding. At that time, Rhonda orally objected to the transfer of the proceeding to Tribal Court.
 
 
 8
 On June 9, 1987, the Tribal Court filed a formal motion to transfer jurisdiction pursuant to Sec. 1911(b) of the ICWA. The State Court granted the motion on June 11, 1987. On June 26, 1987, the Tribal Court accepted jurisdiction of the juvenile proceeding for termination of Rhonda's parental rights.
 
 C. 1991
 
 9
 On January 25, 1991, Rhonda filed a motion in State Court to vacate the June 11, 1987, order of transfer. The basis of her motion was that her oral objection at the hearing on May 27, 1987, made transfer to the Tribal Court pursuant to Sec. 1911(b) improper.[3]
 
 
 10
 On February 11, 1991, the State Court vacated its June 11, 1987, order of transfer to the Tribal Court, concluding that in view of Rhonda's objection, the transfer pursuant to Sec. 1911(b) was void.
 
 
 11
 On February 27, 1991, the Tribe filed, in State Court, a motion to transfer pursuant to the ICWA Sec. 1911(a), claiming that, based on the facts of the case, the Tribal Court had exclusive jurisdiction.
 
 
 12
 On March 8, 1991, the Tribe filed another motion in State Court requesting the State Court to rescind its February 11, 1991, order or, in the alternative, to transfer the proceedings back to Tribal Court pursuant to Sec. 1911(a). The Tribe alleged that the Tribal Court, not the State Court, had exclusive jurisdiction pursuant to Sec. 1911(a) to determine the "child custody proceedings" regarding Kristy and that the State Court lost jurisdiction to vacate its prior transfer order once the transfer was complete.
 
 
 13
 On March 10, 1991, Rhonda filed a motion for summary judgment in opposition to the Tribe's motions to transfer, claiming that at the commencement of the juvenile proceeding Kristy was not a resident of nor domiciled on the reservation.
 
 
 14
 On March 29, 1991, the Tribe filed a response to Rhonda's motion of March 10, 1991, requesting the State Court deny Rhonda's motion for summary judgment and grant summary judgment to the Tribe, or in the alternative, set the matter over for a factual hearing on the issue of Kristy's domicile.
 
 
 15
 On June 5, 1991, the State Court denied the Tribe's motions and entered summary judgment in favor of Rhonda.[4] See In re Shannon James Wahnee; DOB: 4.19.84 and Kristy Wahnee; DOB: 7/19/82, No. JFJ-86-12 (D.Ct.3d Jud.D.Okla. Kiowa County June 5, 1991) Based on the evidence presented in the motion for summary judgment, the State Court found that at the time of the filing of the juvenile proceeding in the State Court, Rhonda and Stuart were not residing on tribal land. Therefore, the State Court concluded that Sec. 1911(a) did not apply. The court further ruled that the order transferring the case to the Tribal Court was void ab initio due to Rhonda's timely objection and that the Tribal Court never obtained personal jurisdiction over Rhonda. Although Blanche appealed the State Court's decision to the Oklahoma Supreme Court, the Tribe did not.
 
 D. 1992-1994
 
 16
 On October 28, 1992, the Tribe filed this action in the federal district court seeking a declaratory judgment as to whether the Tribal Court or the State Court has exclusive jurisdiction to adjudicate the proceeding regarding termination of Rhonda's parental rights. In its motion for summary judgment the Tribe sought a declaratory judgment that pursuant to Sec. 1911(a), the Tribal Court had exclusive jurisdiction.
 
 
 17
 On March 28, 1994, the federal district court ruled that: (1) the Tribal Court had exclusive jurisdiction pursuant to Sec. 1911(a) based on its findings that Kristy was a resident of the reservation, domiciled on the reservation,[5] and a ward of the Tribal Court; and, alternatively, (2) the State Court had no jurisdiction to reconsider and vacate the June 11, 1987, transfer order.
 
 Issues
 
 18
 On appeal, Appellants contend that: (1) the federal district court erred in its determination that the residence and domicile of Kristy were the residence and domicile of Blanche and not that of her parents; (2) the federal district court erred in entering summary judgment where there were material questions of fact in issue regarding the domicile and residence of Kristy; (3) the federal district court improperly sat in appellate status of the State Court instead of giving full faith and credit to the State Court's rulings; and (4) the federal district court improperly assumed jurisdiction over this action.
 
 Discussion
 I.
 
 19
 Initially, it is important to clarify exactly what proceeding the State Court and Tribal Court are disputing over. It is clear that neither party disputes that Kristy is an "Indian child" pursuant to the ICWA. See 25 U.S.C. Sec. 1903(4). However, it is not clear what "proceeding" is at the heart of this jurisdictional dispute.
 
 
 20
 The main focus of the ICWA is in its provisions concerning jurisdiction over Indian child custody proceedings. Specifically, Sec. 1911 provides:
 
 
 21
 (a) Exclusive jurisdiction
 
 
 22
 An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of the tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
 
 
 23
 (b) Transfer of proceedings
 
 
 24
 In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe....
 
 
 25
 25 U.S.C. Sec. 1911. While Sec. 1911(a) creates exclusive jurisdiction in the Tribal Court over "child custody proceedings" in certain circumstances, Sec. 1911(b) creates concurrent but presumptively Tribal Court jurisdiction over specific child custody proceedings in other circumstances. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989).
 
 
 26
 The ICWA specifically defines which "child custody proceedings" are within its purview. Section 1903(1) provides that:
 
 
 27
 (1) "child custody proceeding" shall mean and include--
 
 
 28
 (i) "foster care placement" ...;
 
 
 29
 (ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;
 
 
 30
 (iii) "preadoptive placement" ...;
 
 
 31
 (iv) "adoptive placement"....
 
 
 32
 Such term or terms shall not include a placement based upon ... an award, in a divorce proceeding, of custody to one of the parents.
 
 
 33
 25 U.S.C. Sec. 1903(1).
 
 
 34
 Clearly, the ICWA does not apply to "child custody proceedings" pursuant to divorce proceedings. 25 U.S.C. Sec. 1903(1); DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 514 (8th Cir.1989) (the ICWA does not apply to custody determinations pursuant to divorce proceeding). Therefore, the State Court could not transfer its jurisdiction to the Tribal Court to make custodial determinations regarding Kristy pursuant to the divorce proceeding; the State Court presently retains this jurisdiction, inasmuch as it was stayed pending the outcome of the termination of parental rights proceeding.
 
 
 35
 However, the ICWA specifically covers proceedings involving the termination of parental rights. 25 U.S.C. Sec. 1903(1)(iii). Therefore, once the State Court proceeding to terminate Rhonda's parental rights was initiated in May, 1986, the ICWA came into play and jurisdiction became an issue.
 
 
 36
 At that time, the State Court retained jurisdiction to determine the custody of Kristy pursuant to the divorce proceeding and the only "proceeding" eligible for transfer was the proceeding involving the termination of parental rights. Therefore, this dispute involves only the question as to which court--the Tribal Court or the State Court--has jurisdiction over the proceeding to terminate Rhonda's parental rights.
 
 II.
 
 37
 Before we can reach the merits of Appellant's arguments (1), (2), and (3), we must determine whether the federal district court had jurisdiction to render a declaratory judgment that the Tribal Court had exclusive jurisdiction to decide the issue of termination of Rhonda's parental rights.[6] We are obligated to satisfy ourselves as to our own jurisdiction and this obligation extends to an examination of the federal district court's jurisdiction as well. Alexander v. Anheuser-Busch Companies, Inc., 990 F.2d 536, 538 (10th Cir.1993). We review jurisdictional issues de novo. FDIC v. Hulsey, 22 F.3d 1472, 1479 (10th Cir.1994).
 
 A. Collateral Estoppel
 
 38
 Appellants contend that the federal district court improperly assumed jurisdiction over this case, i.e., that this issue had previously been fully litigated in the State Court; therefore, the federal district court was required to recognize the same preclusive effect that an Oklahoma state court would and refuse to relitigate the issue.
 
 
 39
 By statute, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered. See 28 U.S.C. Sec. 1738; Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); Jarrett v. Gramling, 841 F.2d 354, 356 (10th Cir.1988). Therefore, we must consider the issue and claim preclusion rules of Oklahoma.
 
 
 40
 In Oklahoma the doctrine of collateral estoppel is known as "estoppel by judgment." Hildebrand v. Gray, 866 P.2d 447 (Okla.App.1993). As stated by the Oklahoma Supreme Court:
 
 
 41
 Under the doctrine of collateral estoppel, a judgment, whether in favor of plaintiff or defendant, is conclusive in a subsequent action between the parties on a different claim, as to issues raised in the subsequent action which were actually litigated and determined in the prior action; the test in each case is whether a given issue was necessary to the determination in the former trial.
 
 
 42
 Laws v. Fisher, 513 P.2d 876, 877 (Okla.1973) (citations omitted). The Oklahoma Supreme Court has stated that "the inquiry is whether the question of fact in issue in the latter case is the question of fact actually determined in the former action, and not what might have been litigated and determined therein." Runyan v. City of Henryetta, 321 P.2d 689, 693 (Okla.1958).
 
 
 43
 We believe the doctrine of collateral estoppel precluded the Tribe from relitigating its claims in federal district court. From the record it is clear that the allegations concerning the applicability of Sec. 1911(a), Kristy's residence and domicile, raised by the Tribe in the federal district court, were the same allegations advanced by the Tribe (and Blanche) in State Court. The issue in the State Court in 1991, was whether the Tribe had exclusive jurisdiction pursuant to Sec. 1911(a); the same issue that the Tribe asserted in the federal district court. Although the Tribe attempted to disguise the issue as a declaratory judgment, in reality it asked the federal district court to consider the same issue, applicability of Sec. 1911(a), that the State Court had already decided on the merits.
 
 
 44
 The State Court reached the merits of the Tribe's Sec. 1911(a) exclusive jurisdiction claim when it determined that Sec. 1911(a) did not apply because Rhonda and Stuart were not residing on tribal land when the original petition was filed in State Court. Since the only issue involved the applicability of Sec. 1911(a), the State Court's findings of residence and domicile were necessary to its final judgment.
 
 
 45
 We now turn to whether there was identity of parties in the State Court and federal district court. The Oklahoma Supreme Court has stated that for "a judgment to be estoppel, there must be an identity of parties, as well as of subject-matter." Hildebrand, 866 P.2d at 450. In determining whether there is identity of parties, the court stated:
 
 
 46
 the parties between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered in the same capacities and in the same antagonistic relation, or in privity with the parties in such former action.
 
 
 47
 Id.
 
 
 48
 In both actions, Rhonda and the Tribe were parties aligned in the same adversarial posture. The Tribe voluntarily entered the State Court proceedings in 1991 when it filed its motion to rescind the February 11, 1991, order and, in the alternative, to transfer the action to Tribal Court pursuant to Sec. 1911(a), and by its response in opposition to Rhonda's motion for summary judgment. At all times relevant to this dispute, the Tribe has been treated as a party by all those involved in the proceeding. The Tribe has not challenged its status as such.[7] Rhonda became a party in the federal district court once she intervened in the juvenile proceeding. Alvarado v. J.C. Penney Co., Inc., 997 F.2d 803, 805 (10th Cir.1993) (once a party intervenes, it becomes a full participant in the suit and is treated just as if it were an original party vulnerable to complete adjudication of issues in litigation between intervenor and adverse party).
 
 
 49
 There is no material difference in the "quality" of the parties in the State Court and in the federal district court; the same facts form the basis of both suits; and the Tribe essentially sought identical relief in both courts: to invoke the ICWA and obtain exclusive jurisdiction in the Tribal Court over the termination of parental rights proceeding.
 
 
 50
 Therefore, we conclude that the Oklahoma courts would consider the Tribe's suit here barred by collateral estoppel. Once the Tribe chose a forum in which to litigate the application of the ICWA, it could not change forums simply because it did not like the outcome.
 
 B. 25 U.S.C. Sec. 1914
 
 51
 At oral argument, the Tribe asserted that Sec. 1914 of the ICWA grants the Tribe the right to challenge the State Court's ruling on Sec. 1911(a) in the federal district court as a court of "competent jurisdiction."
 
 Section 1914 of the ICWA provides:
 
 52
 Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of section 1911, 1912, and 1913 of this title.
 
 
 53
 25 U.S.C. Sec. 1914. Sections 1911, 1912, and 1913 are the general substantive provisions of the ICWA.
 
 
 54
 The question before us is not whether the federal district court is a "court of competent jurisdiction." Rather the question is whether the Tribe can institute an action in federal district court after it has lost in state court following full consideration, briefing, and argument on the identical issue of fact and law relating to jurisdiction to terminate parental rights.
 
 
 55
 In Kiowa Tribe of Oklahoma v. Lewis, 777 F.2d 587, 591-92 (10th Cir.1985), cert. denied, 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986), the Tribe moved to intervene in a Kansas state district court proceeding where a non-Indian couple petitioned for adoption of a child enrolled as a member of the Tribe. After considering briefs filed by the Tribe and the couple, the state district court held that the ICWA did not apply and denied the Tribe's motion to intervene on that basis. The Tribe appealed the denial of its motion to intervene to the Kansas Supreme Court, where the court considered briefs and entertained oral argument by counsel for the Tribe and other interested parties. The Kansas Supreme Court affirmed the state district court's judgment that the ICWA was inapplicable.
 
 
 56
 Thereafter, the Tribe filed an action in the federal district court for the District of Kansas, contending that the "court of competent jurisdiction" language in 25 U.S.C. Sec. 1914 supported its claim that federal district courts are not precluded under 28 U.S.C. Sec. 1738 from independently considering the propriety of any judicial determination regarding the applicability of the ICWA. The federal district court dismissed the Tribe's suit on the grounds that res judicata and collateral estoppel precluded relitigating the ICWA's applicability. In affirming, we observed:
 
 
 57
 The question before us is not whether the federal court is a "court of competent jurisdiction," entitled to protect an Indian tribe's interest in foster care placement or terminations of parental rights in Indian children in a case in which the tribe sought to assert its rights under the ICWA before it sought to intervene in the state proceedings. The question before us is not even whether the Tribe could have brought suit in federal court after the state district court denied it the right to intervene. Rather, after its attempted intervention in the state court was denied because the court found the ICWA was inapplicable, the Tribe appealed that determination to the Kansas Supreme Court. There, after full consideration, briefing, and argument, it lost. The question before us is therefore whether the Tribe's taking an appeal to the state supreme court foreclosed the Tribe from relitigating in a later independent federal district court action.
 
 
 58
 Kiowa, 777 F.2d at 592 (footnote omitted).
 
 
 59
 Under Kiowa, it is clear that Sec. 1914 is not an independent ground to relitigate state court decisions. Id. Once the Tribe chose to litigate in State Court, review of the State Court's decision was limited to timely appeal to the state appellate courts and was not "appealable" in federal district court. Under the circumstances presented in this case, we must honor the judgment rendered on the merits by the State Court.
 
 
 60
 Accordingly, we REVERSE the judgment of the federal district court, and REMAND for entry of an appropriate judgment in conformity with this opinion.
 
 
 
 *
 The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Shannon died in 1990 of causes unrelated to this action. Therefore, the dispute revolves solely around Kristy
 
 
 [2]
 The petitions were filed at the request of Stuart based on alleged child abuse and neglect of Shannon while he was living with Rhonda and her boyfriend. It appears from the record that the petition on behalf of Kristy was filed as a matter of standard procedure
 
 
 [3]
 We note that there had been no final adjudication of Rhonda's parental rights in Tribal Court after several hearings over three and one-half years, and that on October 6, 1990, the Tribal Court, on its own motion, continued all court cases indefinitely because of "budgetary constraints and resultant cutbacks in court judicial activity."
 
 
 [4]
 The order reflects that it was written on April 2, 1991, but it is unclear when it was actually filed. However, it is clear that the Tribe appeared, through counsel, by telephone at the April 2, 1991, hearing on the motions
 
 
 [5]
 The federal district court agreed with the Tribe that as of January 24, 1986, the date that the power of attorney was executed giving Blanche temporary custody of Kristy, Kristy lived exclusively with Blanche, who is a resident of the reservation, thus rendering Kristy a resident of the reservation. Comanche Indian Tribe of Oklahoma v. Hovis, 847 F.Supp. 871, 878 (W.D.Okla.1994). However, the State Court found that Kristy's parents were not residing on trust land as of the date of the filing of the termination of parental rights proceeding in May 1986. Although we do not reach the issue of Kristy's residence and domicile at the time of the filing of the termination of parental rights proceeding, we observe that the Supreme Court has stated that "[s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is established by their parents." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). See In re Guardianship of D.L.L. and C.L.L., 291 N.W.2d 278, 282 (S.D.1980) (residence and domicile of children is that of the parents until legally changed and grant of temporary custody to person residing outside the reservation did not constitute abandonment or emancipation on the part of the parent)
 
 
 [6]
 It is not clear that the parties understood the jurisdictional distinction between the termination of parental rights proceeding and the actual custody determination pursuant to the divorce proceeding which the State Court stayed. However, as stated earlier, this dispute involves only the termination of parental rights proceeding
 
 
 [7]
 In the federal district court, the Tribe did challenge the status of the State Court itself and that of Judge Hovis as to whether they were "parties" in the State Court proceeding for purposes of issue preclusion