FILED
United States Court of Appeals
Tenth Circuit

September 20, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER YANCEY,

        Plaintiff-Appellant,

v.

TIMOTHY THOMAS;
TAMMY THOMAS,

        Defendants-Appellees.

No. 10-6239
(D.C. No. 5:10-CV-00534-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **HOLLOWAY** and **PORFILIO**, Senior Circuit Judges.

---

Christopher Yancey filed an action in the United States District Court for the Western District of Oklahoma contending that Oklahoma state-court rulings terminating his parental rights over his Indian child were invalid under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963. The district court

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dismissed his action, determining that either federal abstention was mandated, or the action was barred by the Full Faith and Credit Clause of the United States Constitution (U.S. Const. art. IV, § 1) and 28 U.S.C. § 1738. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Much of the early history of the litigation involving Yancey's parental rights is described in an Oklahoma Supreme Court decision, *In re Baby Boy L.*, 103 P.3d 1099, 1101-03 (Okla. 2004). Tiffany Leatherman and Yancey are the natural parents of Baby Boy L., born on October 4, 2002. Yancey is a member of the Muscogee (Creek) Indian Nation of Oklahoma (the Nation), but Leatherman is not a member of any Native American tribe. Yancey and Leatherman were teenagers when Baby Boy L. was conceived, and they never married. Before the child was born, Leatherman decided to place him for adoption, and she located a couple who were interested in adopting him, appellees Timothy and Tammy Thomas. Baby Boy L. has been in the Thomases' custody since his birth.

In December 2002, Leatherman brought an action in Oklahoma state court to terminate Yancey's parental rights and to determine Baby Boy L.'s eligibility for adoption without Yancey's consent. Leatherman appeared in court, relinquished her parental rights, and consented to the adoption. Yancey appeared in the proceedings and objected to the adoption. The Nation intervened and filed a motion to dismiss, seeking the court's compliance with the child-placement

-2-

preferences of the ICWA. The ICWA provides "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902. In particular, the ICWA gives preference in adoptive placement to members of the Indian child's family or tribe, or other Indian families, in the absence of good cause. *See id.* § 1915(a).

In September 2003 the Oklahoma trial court determined that the ICWA was not applicable and that Baby Boy L. was eligible for adoption without Yancey's consent. The Oklahoma Court of Civil Appeals affirmed, but the Oklahoma Supreme Court reversed and remanded, holding that the ICWA applied and there was insufficient evidence to find that Baby Boy L. was eligible for adoption without Yancey's consent.

On remand following the Oklahoma Supreme Court's decision, the trial court appointed a guardian ad litem for Baby Boy L., and the Thomases' attorney entered an appearance and filed a petition for adoption. After a hearing the court made the following findings in support of its granting the Thomases custody of Baby Boy L.:

> 1. The court finds that the [ICWA] applies. 2. The petitioners, Timothy and Tammy Thomas have shown by clear an[d] convincing evidence, including the testimony of a qualified expert witness, that custody of the minor child by the father is likely to result in emotional damage to the child. See 25 USC Section 1912(e) . . . . That for good cause shown pursuant to 25 USC 1915 the child is to be placed with Timothy and Tammy Thomas instead of the

preferences set forth under ICWA.  The child is at risk of emotional trauma if the child is removed from the Thomas placement.

Aplt. App. at 112 (all-caps omitted).  The Oklahoma Court of Civil Appeals affirmed, holding that clear and convincing evidence supported the trial court's determination that there was good cause to deviate from the ICWA's child-placement preferences.  The Oklahoma Supreme Court denied Yancey's petition for certiorari.

After further proceedings, on February 19, 2008, the Oklahoma trial court denied Yancey's motion to transfer the case to Tribal Court.  Also, it entered an order that Baby Boy L. could be adopted without Yancey's consent because clear and convincing evidence showed that, during the relevant period preceding the petition for adoption, Yancey had failed to contribute to the support of Baby Boy L. and had failed to establish or maintain a substantial and positive relationship with the child.  On appeal the Oklahoma Court of Civil Appeals rejected Yancey's claim that the trial court had failed to comply with the ICWA and affirmed the determination that Baby Boy L. was eligible for adoption without his consent.  The Oklahoma Supreme Court and the United States Supreme Court denied Yancey's petitions for review.

On May 18, 2010, the Oklahoma trial court entered an order terminating Yancey's parental rights over Baby Boy L.  The court found that the ICWA had been complied with and that the Thomases had proved beyond a reasonable doubt

-4-

that Yancey's custody of Baby Boy L. would be likely to result in serious emotional or physical damage to the child. There is no indication in the record that Yancey appealed this order.

On May 19, 2010–the day after the Oklahoma trial court entered its order terminating his parental rights–Yancey filed this action against the Thomases. (He had filed three previous unsuccessful federal-court suits relating to Baby Boy L., one of which reached this court on appeal, *Yancey v. Bonner*, 323 F. App'x 674 (10th Cir. 2009).) The Thomases moved to dismiss the action for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that it was barred by the *Rooker-Feldman* doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine says that because appellate jurisdiction to review a state-court judgment is lodged exclusively in the Supreme Court by 28 U.S.C. § 1257, it is impermissible for a suit in federal district court to be "brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Alternatively, the Thomases contended that if the state-court proceedings remained pending because the adoption of Baby Boy L. had not been finalized, the federal court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), which generally

-5-

forecloses federal-court interference with ongoing state-court proceedings. Yancey responded that *Rooker-Feldman* did not apply because 25 U.S.C. § 1914 provides for federal-court review of state-court decisions under the ICWA. And he asserted that federal abstention was inappropriate because state-court proceedings were no longer pending – his parental rights had been terminated in a final state-court order. In their reply the Thomases raised the additional argument that Yancey's federal-court action was precluded by res judicata because he was seeking to relitigate the same issues that had been decided by the Oklahoma state court.

The district court did not address the *Rooker-Feldman* issue.[1] Nor did it

---

[1] We, too, need not address *Rooker-Feldman*. Although the doctrine poses a jurisdictional bar to our consideration of a claim, the bar is based on a statute, not Article III of the Constitution, so we can avoid the issue if we dismiss a claim on any other ground. In rejecting the so-called doctrine of "hypothetical jurisdiction," which permits a court to assume jurisdiction for the purpose of dismissing a claim on the merits, the Supreme Court in *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998), repeatedly spoke in terms of Article III jurisdiction, rather than jurisdiction in general. *See id.* at 95-101; *see also Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 59-60 (1st Cir. 2003) (*Steel Co.* requires courts to resolve Article III jurisdictional disputes before addressing merits, but courts may dismiss on the merits and thereby bypass problematic jurisdictional issues that do not implicate Article III case-or-controversy requirements); *Marquez-Almanzar v. INS*, 418 F.3d 210, 216 n.7 (2d Cir. 2005) (same); *Jordon v. Att'y Gen.*, 424 F.3d 320, 325 n.8 (3d Cir. 2005) (same). Therefore, we may avoid the *Rooker-Feldman* issue because, as explained below, we can dismiss Yancey's claim on the merits. *See Torromeo v. Town of Fremont*, 438 F.3d 113, 115 (1st Cir. 2006) (bypassing *Rooker-Feldman* issue to consider district court's alternative ruling that action was barred by res judicata). *But cf. Edwards v. City of Jonesboro*, 645 F.3d 1014,

(continued...)

resolve whether the state-court proceedings were final, concluding that it would have to deny relief regardless. It held that if the state-court proceedings remained pending, it would abstain from exercising jurisdiction under *Younger*; and if the state-court proceedings were final, Yancey's claim was foreclosed by the res-judicata effect of the state judgment. After concluding that amendment of the complaint would not cure the defect, the court dismissed Yancey's action with prejudice. Yancey filed a timely notice of appeal.

## II.  Discussion

Yancey argues on appeal that *Younger* abstention is inappropriate in this case because the Oklahoma trial court entered a final order terminating his parental rights over Baby Boy L. The appellees agree that the termination order was final under Okla. Stat. tit. 10, § 7505-7.1(C). And so do we. Accordingly, *Younger* is inapplicable. As a result, we need resolve only whether the district court erred in dismissing Yancey's action as precluded by the state-court judgment.

### A. Standards of Review

We review de novo a district court's application of res judicata, *see MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005), and its

---

[1](...continued)
1017-18 (8th Cir. 2011) (noting conflicting decisions on whether *Rooker-Feldman* must be addressed before dismissing on merits).

construction of a federal statute, *see Rosette Inc. v. United States*, 277 F.3d 1222, 1226 (10th Cir. 2002).

### B.  The Merits

Yancey argues that his claim is not barred by res-judicata doctrine because § 1914 permits federal-court review of state-court decisions under the ICWA. Section 1914 states:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, *any parent* or Indian custodian *from whose custody such child was removed*, and the Indian child's tribe *may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title*.

25 U.S.C. § 1914 (emphasis added).  Yancey contends (1) that Baby Boy L. is an Indian child subject to a state-court action for termination of parental rights; (2) that Yancey, as a parent from whose custody Baby Boy L. was removed, may petition a court of competent jurisdiction to invalidate that state-court action by showing that it violated the ICWA; and (3) that a federal district court is a court of competent jurisdiction.  In support of this construction, Yancey points to the Supreme Court's discussion of the legislative history of the ICWA in *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989), particularly the Court's reliance on the congressional finding that "'the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential

-8-

tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.'" *Id.* at 35-36 (quoting 25 U.S.C. § 1901); *see also id.* at 45 ("Congress perceived the States and their courts as partly responsible for the problem it intended to correct [by passing the ICWA].").

Yancey maintains that "in light of this historical distrust of the state courts, . . . [t]he only rational interpretation [of § 1914] is that Congress intended the federal courts to serve as courts of competent jurisdiction, to review and invalidate, if necessary, the decisions of the state courts which violate the ICWA." Aplt. Br. at 15.

Yancey also relies on the Ninth Circuit's decision in *Doe v. Mann*, 415 F.3d 1038, 1040 (9th Cir. 2005), which held that the *Rooker-Feldman* doctrine did not bar a federal district court from exercising jurisdiction to review a state-court judgment terminating a parent's rights over an Indian child. In *Doe* the mother of an Indian child had filed an action in federal court challenging a state court's jurisdiction to terminate her parental rights and approve the adoption of the child. *See id.* The Ninth Circuit held that the federal district court had federal-question jurisdiction over the claims and that § 1914 grants federal district courts authority to invalidate state-court actions that violate certain provisions of the ICWA. *See id.* at 1041. Although acknowledging that federal statutes permitting federal courts to review state-court judgments are rare, *see id.* at 1043, the court examined the language of § 1914 and held that the "action" that a parent

of an Indian child may petition to invalidate includes a state-court proceeding terminating parental rights; that Congress authorized "a court of competent jurisdiction" to invalidate such state-court actions; and that a federal district court is a "court of competent jurisdiction" under § 1914, *id.* at 1046-47.

The Ninth Circuit distinguished this circuit's decisions in *Morrow v. Winslow*, 94 F.3d 1386, 1393-96 (10th Cir. 1996), *Kiowa Tribe of Oklahoma v. Lewis*, 777 F.2d 587, 590, 591-92 (10th Cir. 1985), and *Comanche Indian Tribe of Oklahoma v. Hovis*, 53 F.3d 298, 302-03, 304 (10th Cir. 1995), because none of these cases addressed the applicability of *Rooker-Feldman*. *See Doe*, 415 F.3d at 1044 n.8. The court declined, however, to determine the relationship between § 1914 and either the full-faith-and-credit provisions of 25 U.S.C. § 1738 or the doctrines of res judicata and collateral estoppel. *See id.* at 1042 n.5.

We are not persuaded. We agree with the Thomases that Yancey's action is barred by res judicata and that the state-court rulings must be given full faith and credit under § 1738.

Under Oklahoma law, "The principle of res judicata as claim preclusion teaches that a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action." *Read v. Read*, 57 P.3d 561, 567 n.18 (Okla. 2001). Yancey does not dispute that the issues he raised in this action were actually litigated between the same parties in the

-10-

Oklahoma trial court and decided by that court. He argues only that a state-court judgment from which an appeal is pending cannot serve as a basis for res judicata. *See Coppedge v. Clinton*, 72 F.2d 531, 534-36 (10th Cir. 1934) (Oklahoma state-court judgment pending appeal was not a bar under res judicata). But Yancey fails to point to a pending appeal of any of the state-court decisions he seeks to challenge in this action. He fully exhausted his state-court appellate remedies with respect to several of the Oklahoma trial court's orders, and he elected not to appeal that court's order terminating his parental rights. The latter order became final for purposes of res judicata when he failed to perfect an appeal. *See Hubbard v. Kaiser-Francis Oil Co.*, 256 P.3d 69, 74 (Okla. 2011) ("The doctrine of res judicata teaches that when the appeal time expires a decision under this rubric becomes impervious to reconsideration and hence binding and conclusive upon the parties." (internal quotation marks omitted)).

Moreover, our decisions in *Kiowa* and *Comanche* foreclose Yancey's contention that, despite § 1738, a federal district court is authorized by § 1914 to review and invalidate a state court's final decision in Indian child-custody proceedings as violative of the ICWA. In *Kiowa* a Tribe filed a federal-court action attacking a Kansas state-court judgment allowing a non-Indian couple to adopt an Indian child. *See* 777 F.2d at 589. Like Baby Boy L., the child in *Kiowa* was born out of wedlock to an Indian father and a non-Indian mother. *See id.* The mother consented to the baby's adoption by a non-Indian couple, who

-11-

took custody of the child immediately after his birth. *See id.* The father's Tribe moved to intervene in the adoption proceedings, but the state court held that the ICWA did not apply and denied the Tribe's motion. *See id.* The Tribe appealed to the Kansas Supreme Court, which affirmed the trial court's determination that the ICWA was inapplicable. *See id.* at 590. Rather than seeking review of the Kansas Supreme Court's decision in the United States Supreme Court, the Tribe filed an action in federal district court, which the court dismissed as barred by res judicata. *See id.*

On appeal, citing § 1738, we said that "[b]y statute, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state in which the judgments were rendered." *Id.*; *see also* § 1738 ("[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). We held that the doctrine of res judicata precluded the Tribe from relitigating its claims under the ICWA in a new federal-court action. *See Kiowa*, 777 F.2d at 590. The Tribe argued, as Yancey does here, that § 1914 creates an exception to § 1738's rule of full faith and credit. *See id.* at 591. But we rejected that contention. We emphasized "that an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal." *Id.* at 592. Examining the language of § 1914, we concluded:

-12-

We cannot read § 1914's reference to "any court of competent jurisdiction" as the type of clear and manifest authorization that federal courts need before they upset the ordinary principles of federal-state comity embodied in 28 U.S.C. § 1738 and the Full Faith and Credit Clause. It seems rather to state simply where such actions may initially be brought. Regardless of whether we agree with the Kansas Supreme Court's construction of the ICWA, here we must honor the judgment it has rendered on the subject.

*Id*.

We recognize that in *Roman-Nose v. New Mexico Department of Human Services*, 967 F.2d 435, 438 n.2 (10th Cir. 1992), we construed *Kiowa* as holding only that "a state-court determination that the [ICWA] is not applicable in a particular custody proceeding is res judicata in a subsequent proceeding to invalidate the state action under . . . § 1914." We indicated that it was an open question whether § 1738 precluded a plaintiff from litigating in federal court whether a state-court proceeding applying the ICWA had in fact complied with the ICWA. *See id.*

But that question is no longer open. It was resolved in *Comanche*, at least in cases in which the state court had actually determined that the ICWA had been followed. *Comanche* involved state-court proceedings to terminate a non-Indian mother's parental rights over an Indian child. *See* 53 F.3d at 299. Over the mother's objection, the father's Tribe moved to transfer the proceedings to Tribal Court. *See id.* at 300. Applying the ICWA, the state court determined that the

-13-

Tribal Court did not have exclusive jurisdiction.[2] *See id.* Rather than appealing the state court's decision, the Tribe filed a federal-court action seeking a declaratory judgment that the Tribal Court had exclusive jurisdiction under the ICWA. *See id.* at 300-01. The federal district court entered judgment in favor of the Tribe. *See id.* at 301.

On appeal to this court the appellants contended that the federal court failed to give full faith and credit to the state court's prior ruling. *See id.* We agreed, holding that the Tribe's federal-court action was barred by collateral estoppel under Oklahoma law. *See id.* at 304. We rejected the Tribe's contention–again, the same as Yancey's–that § 1914 nonetheless granted it the right to challenge in federal court the state court's ruling under the ICWA. We stated:

> The question before us is not whether the federal district court is a 'court of competent jurisdiction.' Rather the question is whether the Tribe can institute an action in federal district court *after it has lost in state court following full consideration, briefing, and argument on the identical issue of fact and law relating to jurisdiction to terminate parental rights.*

---

[2]     Under 25 U.S.C. § 1911(a), "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." The question in *Comanche* was whether the child was domiciled within the tribe's reservation. *See* 53 F.3d at 300.

*Id.* (emphasis added). And we held:

> Under *Kiowa*, it is clear that § 1914 is not an independent ground to relitigate state court decisions. Once the Tribe chose to litigate in State Court, review of the State Court's decision was limited to timely appeal to the state appellate courts and was not "appealable" in federal district court. Under the circumstances presented in this case, we must honor the judgment rendered on the merits by the State Court.

*Id.* at 304-05 (citation omitted).

Yancey's argument that our interpretation of § 1914 is not supported by the language of the statute is unavailing. He cites to the dissenting opinion in *Morrow* and the Ninth Circuit's decision in *Doe v. Mann*. But we are bound by our precedent in *Kiowa* and *Comanche*, unless and until this court grants en banc reconsideration or the Supreme Court issues a contrary decision. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

### III. Conclusion

The district court did not err in dismissing Yancey's federal-court action because it was barred by res judicata. Therefore, the judgment of the district court is AFFIRMED. Yancey's motion to proceed in forma pauperis on appeal is GRANTED.

Entered for the Court

Harris L Hartz
Circuit Judge