**PUBLISH**

**UNITED STATES COURT OF APPEALS Filed 8/23/96**

**TENTH CIRCUIT**

---

ROBERT LLOYD MORROW,

      Plaintiff-Appellant,

v.

THE HONORABLE DAVID
WINSLOW; JOHN DOE; and JANE
DOE,

      Defendants-Appellees.

CHEROKEE NATION and
CAROL GRANT,

      Intervenors.

No. 95-5182

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 95-C-429-B)**

---

Submitted on the briefs:

Chadwick Smith, Tulsa, Oklahoma, for Plaintiff-Appellant.

Michael E. Yeksavich, Tulsa, Oklahoma, for Defendants-Appellees.

Luke Goodwin, Tulsa, Oklahoma, for Intervenor Carol Grant.

---

Before **SEYMOUR**, Chief Judge, **HOLLOWAY** and **BRISCOE**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff-Appellant Robert Lloyd Morrow appeals from the district court's order denying him injunctive and declaratory relief on his complaint challenging Oklahoma adoption proceedings concerning his Indian child as violative of his rights under the Fourteenth Amendment Due Process Clause and the federal Indian Child Welfare Act. Morrow claimed there was subject matter jurisdiction below pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and 42 U.S.C. § 1983, and the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq. (ICWA).[1]

## I

Plaintiff-Appellant Morrow is an "Indian" as defined by 25 U.S.C. § 1903(3) (a citizen of the Cherokee Nation) and the biological father of Credence Monroe Grant born September 29, 1994 to Carol Grant, a non-Indian and Morrow's former wife. The boy Credence is an "Indian Child" as defined by 25 U.S.C. § 1903(4) of the ICWA. Defendant-Appellee David Winslow is an Oklahoma state district judge in Tulsa County who presided over adoption proceedings regarding Credence and Defendant-Appellees John and Jane Doe, the prospective adoptive parents.

During the first trimester of her pregnancy (winter 1994) Carol Grant decided she wanted to place her unborn child for adoption. She desired an open adoption where she and her 15-year-old son could maintain contact with the child. Carol

---

[1]After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. We therefore accept submission on the briefs as the parties have suggested.

2

contacted a Cherokee Nation adoption specialist and a private adoption agency for help in the adoption process. Through these services Carol decided, prior to the birth of Credence, to place her child with the Does.

In February 1994 and again in June 1994, Morrow was contacted regarding the adoption. He told the adoption agency representative that while he did not favor the adoption, he would not fight it. Credence was born on September 29, 1994 and was placed with the Does. On October 12, 1994, the Does filed their petition to adopt Credence in the Oklahoma state district court in Tulsa County. This petition was accompanied by an application for a determination that Robert Morrow's consent to the adoption was not necessary.

Also on October 12 Carol Grant gave her consent to the adoption of Credence by the Does before defendant Judge Winslow. Plaintiff Morrow never executed a written consent to the child's placement. Judge Winslow set a hearing for November 4, 1994 to determine whether plaintiff's consent was necessary for the adoption. At that hearing Morrow for the first time objected to the adoption and termination of his parental rights. On November 15, 1994, Morrow filed a counterclaim in the state proceeding, requesting custody of Credence. On November 15, 1994, Morrow also filed a motion to dismiss the Does' adoption petition on the grounds of failure to comply with the federal ICWA and the Oklahoma Indian Child Welfare Act. I App. at 91, 95.

3

On December 9, 1994, Morrow filed a motion to transfer the adoption proceedings to the Cherokee Nation District Court in Tahlequah. On January 9, 1995, the Cherokee Nation filed a motion to intervene, which was granted. Carol Grant objected to the transfer to the Cherokee tribal court, and the state court overruled the motion to transfer on January 25, 1995.

The original trial date in the state adoption case, December 16, 1994, was continued numerous times, but finally reset for May 17, 1995. However, on May 11, 1995, Morrow filed this suit in the United States District Court for the Northern District of Oklahoma, and the May 17 trial date for the state adoption case was stayed that day by the state judge, pending the federal proceedings.

In his complaint in federal court, Morrow named as defendants Judge Winslow and John and Jane Doe, the prospective adoptive parents. Morrow sought a temporary and permanent injunction enjoining the defendants "from continuing their policy, practice, custom or usage of non-compliance with the Indian Child Welfare Act . . . ." II App. at 306 (Complaint, ¶ 7). In addition he sought a declaratory judgment on these questions:

> [1] Whether the Defendants have violated due process of law by the Fifth and Fourteenth Amendments of the U.S. Constitution by failing to comply with the ICWA, by denying Plaintiff custody or visitation with his minor child, and by denying Plaintiff a timely hearing to protect his parental interest and bonding with the minor child.
>
> [2] Whether the provisions of the ICWA supersede Oklahoma law regarding rights of unwed fathers pursuant to 10 O.S.A. § 60.6(3).

4

Id. at ¶ 8.

After answers were filed, an evidentiary hearing was held in federal court on June 30, 1995, on which date a partial stipulation of facts was filed. On July 31, 1995, the federal district judge entered an order denying all relief to plaintiff Morrow, and granting judgment in favor of defendants John and Jane Doe and Judge Winslow and against Morrow and the Cherokee Nation. In that ruling, the district judge concluded "that under the ICWA and the OICWA Carol Grant had standing to and did timely object to the transfer of this case to the tribal court." Judgment of July 31, 1995 at 4, ¶ 12.

The federal judge's order addressed the merits of plaintiff Morrow's constitutional claims and held that "there has been no showing that the state court proceeding, and the Honorable David Winslow presiding, has and/or have denied Plaintiff Robert Lloyd Morrow and the Plaintiff/Intervenor, Cherokee Nation, due process in the adoption matter of minor child Credence Monroe Grant, nor is there any showing that such a denial of due process in [sic] imminent." The court therefore denied all relief. Morrow appeals from this judgment. The Cherokee Nation does not appeal.

After the instant appeal was commenced, the state adoption court considered the matter of whether Morrow's consent to the adoption was necessary. A trial on this issue was held on October 16, 1995. On December 1, 1995, the state adoption judge entered an order discussing Morrow's contentions and concluding that his

5

consent was not necessary for the adoption. After submission of this appeal on the briefs in March 1996, on June 27, 1996, on our own motion, we ordered the parties to submit supplemental memoranda advising us of the current status of the state adoption proceeding and addressing two questions: (1) if an adoption order has been entered in that proceeding, what are the positions of the parties as to whether dismissal of this federal suit should be ordered under the doctrine of Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Doe v. Pringle, 550 F.2d 596 (10th Cir. 1976), cert. denied, 431 U.S. 916 (1977); and (2) if the state adoption proceeding is still pending, whether we should vacate and remand, directing abstention by the federal district court under the rationale of Younger v. Harris, 401 U.S. 37 (1971), and Moore v. Sims, 442 U.S. 415 (1979).

The supplemental memoranda of the parties were filed in July 1996 and we are advised that following the state adoption judge's December 1, 1995 order finding that plaintiff-appellant Morrow's consent was not necessary for the adoption, the second stage of the state adoption proceeding was completed on December 16, 1995. The appellees' memorandum says that the state judge resolved the second stage of the adoption against Morrow, determining that the adoption was in the best interest of the child and should be finalized on December 13, 1995; that no written memorialization of this ruling has been filed; and that there is a pending motion to settle the terms of the order so that the actual decree of adoption had not been

6

entered when appellees' supplemental memorandum was filed July 17, 1996. Plaintiff-Appellant Morrow's supplemental memorandum filed July 19, 1996, essentially agrees on the status of the state adoption case, but adds that it was Morrow who on April 19, 1996 filed the motion to settle the journal entry of judgment and that a hearing on this matter was set for July 19, 1996. The clerk of the state district court informs us that no judgment has been entered as of August 12, 1996.

We have considered the parties' memoranda and their previously submitted briefs. For reasons that follow, we conclude that we should direct abstention. Because we conclude that abstention is appropriate we do not reach the Rooker-Feldman question. See Owens-Corning Fiberglass Corp. v. Moran, 959 F.2d 634, 635 (7th Cir. 1992) (rather than attempting "a problematic application of the Rooker-Feldman doctrine," the court applied abstention principles and refused to issue an injunction to enjoin pending state litigation on the grounds that principles of federalism and comity would be upset).

## II

### A

A threshold question we face is whether we may raise the abstention issue ourselves since it was not raised below. Of course, abstention has now been addressed in the parties' supplemental memoranda filed in July 1996 as our order of June 27, 1996 directed. Plaintiff-Appellant Morrow's supplemental memorandum

7

argues that abstention should not be applied because the state adoption case here is private litigation, with neither the State nor any State agencies being parties. The Defendants-Appellees' supplemental memorandum says that if the case is not to be dismissed under the Rooker principle, which appellees first favor, abstention under Younger v. Harris and Moore v. Sims should be applied since otherwise Morrow would be permitted to pursue a second avenue of review and litigation he already has pursued in the state proceeding, producing chaos.

We are persuaded that we correctly raised the abstention question sua sponte and that we should weigh carefully the considerations relevant to abstaining. We are mindful that the Supreme Court has held that abstention may be waived. In Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986), the Court said:

> A State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention. See Brown v. Hotel Employees, 468 U.S. 491, 500, n. 9 (1984); Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 479-480 (1977); Sosna v. Iowa, 419 U.S. 393, 396-397, n. 3 (1975). But in each of these cases the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits. We think there was no similar consent or waiver here, and we therefore address the issue of whether the District Court should have abstained from deciding the case.

Our court has also said that the Younger abstention argument may be waived. In Association of Community Organizations for Reform Now v. Municipality of Golden, Colorado, 744 F.2d 739 (10th Cir. 1984), we concluded that under the

8

circumstances of that case we should not invoke the Younger doctrine:  "We conclude that the City of Golden has voluntarily submitted to a federal forum, and therefore 'principles of comity [underlying the Younger abstention doctrine] do not demand that the federal court force the case back into the State's own system.'"  744 F.2d at 742-43 n.2 (citation omitted).[2]

During the state court hearing on May 17, 1995 in the instant case, the date on which the state trial was set, Morrow's attorney advised the state judge that he had on file a motion to stay the state proceedings.  Counsel for the intervening natural mother then stated he was ready for trial, but that he understood the court's logic in not commencing any trial at that time and in passing the case to a date subsequent to the federal court's review.  I App. at 294.  Counsel for the adoptive parents said that he was in the same position as the mother's counsel; that he was torn by the wisdom of going to trial in the state court; and that he would just as soon dispose of the federal case as a practical matter before returning to state court.   Id.

---

[2]See also Walnut Properties, Inc. v. City of Whittier, 861 F.2d 1102, 1106 (9th Cir. 1988) (declining to address abstention issue because issue was not raised until second appeal from district court and after earlier remand from Supreme Court), cert. denied, 490 U.S. 1006 (1989); Shannon v. Telco Communications, Inc., 824 F.2d 150, 151-52 (1st Cir. 1987) (because state did not press the abstention issue before court of appeals, court addressed merits of appeal); Universal Amusement Co. v. Vance, 587 F.2d 159, 163 n.6 (6th Cir. 1978) ("[a]ppellant did not raise the question of Younger abstention, and that issue, being non-jurisdictional, is thus not before this court."), aff'd, 445 U.S. 308 (1980) (per curiam); but see Federal Express v. Tennessee Public Service Comm'n, 925 F.2d 962, 966 (6th Cir.), (noting in dictum that the Supreme Court has indicated that abstention may be raised by the court sua sponte), cert. denied, 502 U.S. 812 (1991).

Nevertheless, we feel we should address the abstention issue <u>sua</u> <u>sponte</u>.

In <u>Belloti v. Baird</u>, 428 U.S. 132, 143 n.10 (1976), the Court noted "the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar this Court's consideration of the issue."[3] The Court also stated: "Indeed, it would appear that abstention may be raised by the court <u>sua</u> <u>sponte</u>." <u>Id.</u> at 144 n.10. In addition, the Court recently noted that "federal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, <u>Younger v. Harris</u>, 401 U.S. 37 (1971), or with certain types of state civil proceedings, see <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975); <u>Juidice v. Vail</u>, 430 U.S. 327 (1977) . . . ." <u>Quackenbush v. Allstate Insurance Co.</u>, 116 S. Ct. 1712, 1721 (1996). In <u>Quackenbush</u> the Court noted that "it has long been established that a federal court has the authority to decline to

---

[3]The strongest statement suggesting that a party <u>must</u> raise abstention is found in <u>Winston v. Children and Youth Services</u>, 948 F.2d 1380 (3rd Cir. 1991), <u>cert. denied</u>, 504 U.S. 956 (1992). There the majority concluded that "[a]bstention, unlike mootness, does not present a jurisdictional issue. A party who wishes a federal court to abstain from deciding a live controversy in deference to a pending state action must preserve its claim in both the district court and the court of appeals." <u>Id.</u> at 1384. The majority concluded that the abstention issue was not preserved properly and therefore was waived. <u>Id.</u> at 1385.

Judge Garth, in dissent, concluded that the majority ignored circuit precedent in refusing to reach the merits of the abstention issue in the absence of a proper cross-appeal. <u>Id.</u> at 1397-98 (Garth, J., dissenting). He concluded that the federal court should have abstained in light of the ongoing state custody proceedings. <u>Id.</u> at 1398 ("Under the circumstances present here, a federal court should not intrude in the state processes involving family custody issues, but rather, should abstain."). We disagree with the <u>Winston</u> majority opinion and are persuaded by Judge Garth's cogent dissent.

exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity' . . . ." Id. (quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 120 (1981) (Brennan, J., concurring)).  The Court went on to say:

> Though we have thus located the power to abstain in the historic discretion exercised by federal courts "sitting in equity," we have not treated abstention as a "technical rule of equity procedure."  [Citation omitted].  Rather, we have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief.

Quackenbush, 116 S. Ct. at 1721-22 (emphasis added).

We are convinced that we have properly raised the abstention issue sua sponte. Therefore, we will consider whether abstention is appropriate in these circumstances.

## B

Younger v. Harris involved the indictment of Harris in a California state court for alleged violations of the California Criminal Syndicalism Act.  After his indictment, Harris filed suit in federal district court to enjoin the state district attorney from proceeding with the prosecution on the ground that the California act violated his First and Fourteenth Amendment rights to free speech and press.  A three-judge district court found that the California act violated Harris's constitutional rights and enjoined his prosecution.  The Supreme Court reversed, concluding that the injunction violated "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."  401 U.S. at 41. The Court said:

11

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism."

Id. at 44.

Younger abstention has also been applied in cases involving state civil proceedings. In Huffman v. Pursue, Ltd., 420 U.S. 592 (1975), the Court vacated a federal injunction against enforcement of a state judgment insofar as it closed a theater as a nuisance for showing obscene films which had not been adjudged obscene in prior adversary hearings. The Court held that Younger principles applied even though the state proceeding was civil in nature; it said the state procedure there was more akin to a criminal prosecution than most civil cases; and the Court said that federalism considerations, if anything, weighed more heavily toward federal restraint where injunctive relief was sought against state judicial proceedings than where relief against executive officers was sought. Id. at 603-04. The Court also held that the federal plaintiff should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings. Id. at 605. The court said that a party must exhaust his state appellate remedies before seeking a federal injunction

12

unless he can bring himself within one of the exceptions in <u>Younger</u>. <u>Id.</u> at 609, 611. Those exceptions are (1) if the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) if the challenged statute is flagrantly violative of express constitutional prohibitions in every clause and paragraph thereof, or (3) if extraordinary circumstances exist. <u>Phelps v. Hamilton</u>, 59 F.3d 1058, 1063-64 (10th Cir. 1995). We find that from the record before us, and in the supplemental memoranda of the parties addressing <u>Younger</u> abstention, none of these <u>Younger</u> exceptions is shown to exist here.

We are mindful, however, that the Supreme Court itself has cautioned that <u>Younger</u> abstention is the exception rather than the rule:

> "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." <u>Willcox v. Consolidated Gas Co.</u>, 212 U.S. 19, 40 (1909) (citations omitted).

<u>New Orleans Public Service, Inc. v. Council of New Orleans</u>, 491 U.S. 350, 358-59 (1989) (hereinafter <u>NOPSI</u>).

We must be observant of these teachings in <u>NOPSI</u>. We nevertheless do not feel that they require that we dismiss the forceful reasoning and applications of <u>Younger</u>. The Court has instructed us that "<u>Younger</u> . . . <u>and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances.</u>" <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982) (emphasis added). In

13

Middlesex the Court also made it clear that the "policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Id. at 432. It cannot be gainsaid that adoption and child custody proceedings are an especially delicate subject of state policy, the Court stating that "[f]amily relations are a traditional area of state concern." Moore v. Sims, 442 U.S. 415, 435 (1979). The Court further noted in Moore that the doctrine of Younger, "which counsels federal court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." Moore, 442 U.S. at 423.

In Moore the Texas Department of Human Resources had instituted a suit for emergency protection of three children under the Texas Family Code. After various state proceedings, the children's parents brought suit in federal district court where a three-judge court held part of the Texas Family Code unconstitutional and enjoined the pending state proceedings under the Code. The Supreme Court reversed, holding that Younger abstention was appropriate because of the traditional area of state concern for family relations. 442 U.S. at 434-435.

In sum, there are persuasive reasons for applying abstention in this case under the Supreme Court's precedents. There do remain, however, some additional questions which we should address before reaching a conclusion on applying abstention here. We turn now to these questions.

14

## C

## 1

First, Morrow claims federal court jurisdiction under § 104 of the Indian Child Welfare Act, 25 U.S.C. § 1914. Section 1914 provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

Section 1914 appears to authorize the type of suit Morrow brought in the federal district court; and thus the statute arguably conflicts with the application of abstention by evincing a policy for federal adjudication of Morrow's case. We must therefore look to the intent and purpose of the ICWA to determine the scope of § 1914.

In the first section of the ICWA, 25 U.S.C. § 1901, Congress found

> (3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

> (4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

> (5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial

15

bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

The declared policy of the ICWA is set forth in 25 U.S.C. § 1902:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive home which will reflect the unique values of Indian culture, and by providing assistance to Indian tribes in the operation of child and family service programs.

The Supreme Court has noted that the ICWA "was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32 (1989). Evidence presented in Senate hearings showed that 25 to 35% of all Indian children had been separated from their families and placed in adoptive families, foster care, or institutions. Id.; H.R. Rep. No. 1386, 95th Cong., 2d Sess. 9 (1978), reprinted in 1978 U.S.C.C.A.N. 7530, 7531 (hereinafter "House Report"). In Holyfield the Court said:

> The ICWA thus, in the words of the House Report accompanying it, "seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society." House Report, at 23. It does so by establishing "a Federal policy that, where possible, an Indian child should remain in the Indian community," *ibid.*, and by making sure that Indian child welfare

16

determinations are not based on a "white middle-class standard which, in many cases, forecloses placement with [an] Indian family." *Id.*, at 24.

490 U.S. at 37.

Thus, both the Court and Congress have made clear that the ICWA is intended to protect the rights of Indian children and tribes. As part of this protection, § 1914 allows a petition to invalidate a state court foster care placement or termination of parental rights action on the grounds that it violated §§ 1911, 1912, or 1913, to be brought in <u>any</u> court of competent jurisdiction. We have held that federal district courts have jurisdiction under 28 U.S.C. § 1331 over complaints in which a plaintiff alleges a violation of §§ 1911, 1912, or 1913. <u>Roman-Nose v. New Mexico Dep't of Human Services</u>, 967 F.2d 435, 437 (10th Cir. 1992). Morrow alleged violations of §§ 1912 and 1913, and therefore, under § 1914 and <u>Roman-Nose</u>, we believe there is jurisdiction to hear Morrow's claims in either federal or state court since those courts fall within the definition of "any court of competent jurisdiction" in § 1914.[4]

---

[4]We note that some state courts have held that § 1914 provides a cause of action only for parents from whose custody the child is removed. <u>See</u> <u>In the Matter of the Adoption of a Child of Indian Heritage</u>, 543 A.2d 925, 935-36 (N.J. 1988); <u>In re Adoption of Baby Boy L</u>, 643 P.2d 168, 175-76 (Kan. 1982); <u>In Interest of S.A.M.</u>, 703 S.W.2d 603, 608 (Mo. Ct. App. 1986). These courts have read the phrase "from whose custody such child was removed" as modifying both the phrase "Indian custodian" and "any parent." Under this interpretation of § 1914, the Indian child's parent could bring a suit only if the child was removed from the parent's custody. Some of these courts have also held that "custody" refers to physical rather than legal custody. <u>See</u> <u>In re Adoption of Baby Boy L</u>, 643 P.2d at 175-76 (suggesting that "custody" in § 1914 means physical control); <u>In Interest of S.A.M.</u>, 703 S.W.2d at 608 (same). We believe these cases incorrectly interpret § 1914 in

17

This does not answer our abstention question, however, because it is not clear from the language of § 1914 that Congress intended to allow federal courts to enjoin ongoing state adoption proceedings. Because of this uncertainty, it is appropriate to look to the legislative history of the ICWA. See United States v. Abreu, 962 F.2d 1447, 1450 (10th Cir. 1992) ("[w]hen the plain language of [a] statute does not unambiguously reveal its meaning, we turn to the legislative history"), vacated on other grounds, 508 U.S. 935 (1993) (mem.).

The House Report notes:

> While the committee does not feel that it is necessary or desirable to oust the States of their traditional jurisdiction over Indian children falling within their geographic limits, it does feel the need to establish minimum Federal standards and procedural safeguards in State Indian child custody proceedings designed to protect the rights of the child as

---

light of the ICWA's broad purpose to protect the rights of Indian children, parents and tribes.

It is unclear whether the phrase "from whose custody such child was removed" modifies "any parent." Therefore, we look to the legislative history. In its section-by-section analysis, the House Report notes: "Section 104 [25 U.S.C. § 1914] authorizes the child, parent, or Indian custodian, or the tribe to set aside any foster care placement or termination of parental rights on the grounds that the rights secured under [25 U.S.C. §§ 1911, 1912, or 1913] were violated." House Report at 23, 1978 U.S.C.C.A.N. at 7546. This statement does not indicate whether "from whose custody such child was removed" is intended to modify "any parent." However, because the purpose of the statute is to protect the rights of Indian parents, children and tribes, we believe the interpretation which is more protective of those rights is the more appropriate interpretation. The more restrictive interpretation that "from whose custody such child was removed" modifies "any parent" is contrary to this protective purpose, so we reject that interpretation and conclude that "any parent" stands alone, unmodified by the phrase "from whose custody such child was removed." Therefore, § 1914 provides a cause of action for Morrow without regard to whether or not Credence was removed from his custody.

18

an Indian, the Indian family and the Indian tribe.

House Report at 19, 1978 U.S.C.C.A.N. at 7541 (emphasis added). This statement indicates that "the ICWA establishes 'minimum Federal standards and procedural safeguards in State Indian child custody proceedings designed to protect the rights of the child as an Indian, the Indian family and the Indian tribe.'" Kiowa Tribe of Oklahoma v. Lewis, 777 F.2d 587, 590 n.3 (10th Cir. 1985), cert. denied, 479 U.S. 872 (1986); it does not indicate, however, that the ICWA intended to allow federal court interdiction of ongoing state custody disputes involving Indian children.

While § 1914 grants "any court of competent jurisdiction," and thus a federal as well as state court, authority to consider a challenge to foster care placements and terminations of parental rights, we do not believe that preemptive federal collateral attacks, such as Morrow's, are what Congress intended to permit in § 1914.[5] Instead,

---

[5]The dissent concludes that in the circumstances of Morrow's case, § 1914 permits his collateral attack in federal court against the ongoing state adoption proceeding and prevents application of abstention principles by us. As noted in Part I, *supra*, in November 1994 Morrow alleged, in the state proceeding, failure of the state adoption petition to comply with the federal and state Indian Child Welfare Acts and thus he was there pressing his ICWA claims well before bringing his second front attack on May 11, 1995, in federal court by the instant suit, which also alleged his ICWA claims. II App. at 306. We do not believe the ICWA supports such a proliferation of litigation which would run counter to the purpose of expeditious determination of Indian child custody that Mississippi Band of Choctaw Indians v. Holyfield favors. 490 U.S. at 53-54.

In the circumstances before us, we are persuaded that the federal ICWA should be construed as providing its minimum federal standards, as § 1902 notes, but that the statute does not indicate "that it is necessary or desirable to oust the states of their traditional jurisdiction over Indian children," in the words of the House Report.

(continued...)

19

we believe that § 1914 and related provisions of the ICWA do not preclude our consideration of abstention.[6] Younger's principles of comity and federalism would

---

[5](...continued)
Where the Indian parent's ICWA claims have already been asserted in the state court of competent jurisdiction, they can be vindicated there and we need not disregard the policy of abstention which can also be accommodated so as to avoid duplicitous and protracted litigation.

[6]These statutory provisions provide a broad spectrum of protective measures for the benefit of Indian children, their parents, and the tribes:

Section 1911 provides for exclusive tribal jurisdiction over child custody proceeding involving an Indian child who resides or is domiciled within the tribal reservation (except where such jurisdiction is vested in the state by existing federal law) (§ 1911(a)); transfer of foster care placement or termination of parental rights proceedings from state to tribal court under certain circumstances for Indian children not domiciled or residing within the reservation (§ 1911(b)); the right of the tribe, parent, custodian, or child, to intervene in state court foster care or termination proceedings (§ 1911(c)); and full faith and credit to the public acts, records and judicial proceedings of any Indian Tribe applicable to Indian child custody proceedings to the extent provided in § 1911(d).

Section 1912 provides for notice by the state court in an involuntary proceeding to the tribe, and the parent or custodian (§ 1912(a)); appointment of counsel to indigent parents or custodians in removal, placement, or termination proceedings (§ 1912(b)); right of access to reports and documents filed with the court (§ 1912(c)); that the party seeking to effect foster care placement or termination of parental rights satisfy the court that remedial and rehabilitative efforts to prevent the breakup of the Indian family have been made and that those efforts proved unsuccessful (§ 1912(d)); that no foster care placement may be ordered in the absence of clear and convincing evidence, including expert testimony, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child (§ 1912(e)); that no termination of parental rights may be ordered in the absence of proof beyond a reasonable doubt, including expert testimony, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child (§ 1912(f)).

Section § 1913 provides minimum standards for obtaining valid voluntary consent of a parent or Indian custodian to a foster care placement or to termination

(continued...)

be disregarded by allowing federal court intervention into ongoing state court proceedings here. And, if federal court intervention was allowed it could result in numerous delays as multiple, piecemeal federal litigation worked its way through the federal courts. Here, the state proceedings were stayed by the state judge pending the federal district court proceedings. Since the state proceedings resumed, there have been a number of substantial developments in the state case. We do not believe that Congress envisioned § 1914 to authorize the type of federal court supervision into ongoing state adoption proceedings that Morrow asks us to impose.

Thus we are persuaded that § 1914 does not prevent full consideration of the abstention doctrine.

**2**

Second, Morrow argues that abstention is inappropriate because the state adoption case is private litigation, with neither the State nor any of its agencies being a party. Appellant's Supplemental Memorandum at 6. Morrow relies on Miofsky v. Superior Court, 703 F.2d 332 (9th Cir. 1983), inter alia.

Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987), is pertinent to the argument

_____

[6](...continued)
of parental rights (§ 1913(a)); that withdrawal of consent to foster care placement may be made at any time (§ 1913(b)); that withdrawal of consent to termination of parental rights may be made at any time prior to entry of a final decree of termination or adoption (§ 1913(c); that withdrawal of consent to termination of parental rights up to two years after an adoption decree (and longer if allowed by state law) may be made if the consent was obtained through fraud or duress (§ 1913(d)).

Morrow makes because there the Court applied <u>Younger</u> abstention in a case where the state was not a party. Pennzoil brought suit in Texas state court and recovered a total judgment which, with prejudgment interest, would exceed $11 billion. Under Texas law Pennzoil would have been able to commence enforcement of the judgment unless Texaco could post a bond of more than $13 billion, which was not possible. Thus, Pennzoil would have been able to commence enforcement of the judgment before Texaco's appeal was resolved. Texaco brought suit in the United States District Court for the Southern District of New York alleging that the Texas proceedings would result in violation of the federal Constitution and various federal statutes. The district court issued the injunction, which the Second Circuit affirmed.

The Supreme Court reversed, concluding that <u>Younger</u> abstention was required. The Court pointed out that it did not hold that <u>Younger</u> abstention is always appropriate when civil proceedings were pending in a state court;[7] the Court

---

[7]In <u>Schall v. Joyce</u>, 885 F.2d 101 (3d Cir. 1989), the Third Circuit applied <u>Younger</u> to a constitutional challenge to Pennsylvania's confession of judgment procedures. At the time of the federal suit, the plaintiff was also involved in state proceedings to set aside a judgment entered against her by confession. The federal district court stayed the federal suit pending the resolution of the state proceedings.

The Third Circuit affirmed, applying <u>Younger</u>. The majority concluded that <u>Pennzoil</u> applied, and that abstention was therefore appropriate because of the state's interest in enforcing the orders and judgments of its courts. 885 F.2d at 109-10. The court concluded that although the state judgment at issue was <u>ex parte</u>, this was no basis for concluding that the state interest was any weaker than it was in <u>Pennzoil</u>. <u>Id.</u> at 109. The majority in <u>Schall</u> stated, however, that "the state's interest in litigation between private persons is less weighty than other state interests protected by <u>Younger</u>," and, therefore, "federal courts may, in an appropriate case, interfere

(continued...)

said that as in Juidice v. Vail, 430 U.S. 327 (1977), it relied on the State's interest in protecting the authority of the judicial system so that its orders and judgments were not rendered nugatory. Pennzoil, 481 U.S. at 14 n.12. The Court added that both Juidice and Pennzoil involved challenges to the processes by which the state compels compliance with the judgments of its courts. Id. at 13-14. While private litigation was involved, due to such interest of the state in the litigation, abstention was applied, the injunctive order was reversed and the case was remanded for dismissal.

We are satisfied that the circumstances before us demonstrate a sufficient state interest that here also the abstention doctrine should be applied. The Supreme Court has made emphatically clear its recognition that "[f]amily relations are a traditional area of state concern." Moore v. Sims, 442 U.S. at 435. The state judge who was presiding in the adoption proceeding was named as a defendant. It is that judge who has a special obligation in connection with the judicial administration of the proceeding in the best interest of the child. The state, although not a party,

---

[7](...continued)
with an ongoing privately initiated state proceeding in which the state court has not yet rendered judgment even if Younger would preclude such interference in a case in which the state has already entered a judgment." 885 F.2d at 109.

We must follow Middlesex County Ethics Comm., 457 U.S. at 432 which instructed that "policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." We believe that, under Middlesex County and Pennzoil, Younger is applicable when important state interests are involved even if there is no state court judgment whose enforcement is sought.

23

obviously has an interest in the orderly conduct of the proceedings in its courts in a manner which protects the interests of the child and the family relationship. In Huffman v. Pursue, Ltd., the Court said that interference with the state judicial proceeding prevented effectuation not only of state substantive policies, "but also [prevented the state] from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies." 420 U.S. at 604. We feel these factors demonstrate that here abstention is clearly favored, and that we should not permit "the luxury of federal litigation of issues presented by ongoing state proceedings," Huffman, 420 U.S. at 605, which involve family relations, a traditional area of state concern. Moore v. Sims, 442 U.S. at 435.

We are not persuaded that Miofsky v. Superior Court, 703 F.2d 332 (9th Cir. 1983), supports Morrow's objection to abstention here. In Miofsky, an anesthesiologist was a defendant in numerous civil actions filed by former patients. The plaintiffs in those actions scheduled depositions of psychiatrists who had examined Miofsky in connection with state criminal proceedings. Miofsky moved for a protective order to prohibit the witnesses from disclosing information about him in their depositions. After the California trial and appellate courts denied the relief sought by Miofsky, he brought a § 1983 action in a federal district court, alleging unconstitutional infringement of his privacy interests, inter alia. The Ninth Circuit held that federal jurisdiction did exist and that Younger did not require dismissal on

24

abstention grounds, noting the unflagging obligation of the federal courts to exercise their jurisdiction.

We are satisfied that the state interest in the underlying civil litigation in Miofsky was substantially less than it is here where a traditional area of state concern for family relations is implicated. We do not find Miofsky persuasive on the Younger question before us.

In sum, we reject the contention that the absence of the state as a formal party justifies disregarding the abstention doctrine where the recognized state interest in the state's adoption proceeding is apparent.

**3**

In light of the precedents of the Supreme Court we have reviewed, we are convinced that the circumstances before us call for application of the abstention doctrine. Plaintiff-Appellant Morrow participated in the state adoption proceeding and continues to participate there. In November 1994, Morrow asserted claims of violations of the federal ICWA and the Oklahoma Indian Child Welfare Act. We feel that the ongoing state proceeding does "afford an adequate opportunity" to raise the ICWA and constitutional claims of Morrow, Moore v. Sims, 442 U.S. at 430, and there is no showing of a procedural bar against his assertion of those claims. We are persuaded that "Younger . . . and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar

25

Ass'n, 457 U.S. at 431. Quackenbush instructs us that the Court has "recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." 116 S. Ct. at 1722. We are convinced that this is such a case and that the circumstances before us counsel abstention.

Accordingly, we **VACATE** the district court's judgment on the merits of Morrow's claims which denied injunctive and declaratory relief. We **REMAND** the case to the district court with directions to abstain and to dismiss Morrow's case without prejudice.

No. 95-5182, MORROW v. WINSLOW

**SEYMOUR**, Chief Judge, dissenting:

I am satisfied that the federal district court correctly resolved the merits of Mr. Morrow's claims under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 *et seq.*, and I would therefore affirm on that basis. For the reasons set out below, I am unable to agree with the majority's decision to require abstention under Younger. Accordingly, I must dissent.

I do not agree with the majority's conclusion that the State's interest here is sufficient to support abstention in the face of the strong federal interest Congress has expressed in the welfare of Indian children. The majority states at page 23 of its opinion that family relations are a traditional area of state concern, quoting Moore v. Sims, 442 U.S. 415 (1979). In Moore, the State was a party, contrary to the situation here. Moreover, and more significantly, Moore did not involve an Indian child, a distinction that I view as critical given the Congressional statements set out in the ICWA. "Because of the unique legal status of Indians in American jurisprudence, legal doctrines often must be viewed from a different perspective from that which would obtain in other areas of the law." Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 553 (9th Cir. 1991).

I do not believe we can assign the State's interest in providing a forum for

determining the custody of an <u>Indian child</u> the requisite weight for abstention purposes in light of the Congressional finding in the ICWA that "the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, <u>have often failed to recognize</u> the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5). To remedy this failing by the States, Congress declared:

> It is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families <u>by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.</u>"

<u>Id.</u> § 1902. Congress has thus imposed Federal standards on custody disputes involving Indian children which override an otherwise traditional area of state concern precisely because the States have not been sensitive to the unique circumstances arising when the custody of Indian children is involved. In my judgment, these Congressional pronouncements clearly indicate that the federal interest is paramount here, and I therefore cannot agree that the State's interest is sufficient to support a decision to abstain.

Because the whole purpose of the ICWA is to set out these standards and impose them on the States as a matter of federal law, I must also disagree with the majority's statements at page 19 that Congress did not intend section 1914 of the

ICWA to allow a federal suit challenging the legality of an ongoing state custody determination of an Indian child. The majority cites no authority for that proposition and it is, of course, directly contrary to the canon of construction that "[s]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985); see also Native Village of Venetie, 944 F.2d at 548. Section 1914 authorizes any competent court to invalidate the custody placement of an "Indian child who is the subject of any action for foster care placement or termination of parental rights under State law" when the action violates enumerated provisions of the ICWA. Removing an Indian child from the custody of a parent or Indian custodian frequently occurs during such proceedings and long before a final disposition of the case is made. Nothing in the language of the statute or its legislative history provides any support for the majority's conclusion that this removal cannot be challenged until a final order in the underlying action is entered. Indeed, the plain intent of the statute appears to me to be to the contrary. As the Supreme Court has pointed out, allowing an expeditious determination of whether the required Federal standards have been followed will avoid much potential anguish. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 53-54 (1989). Moreover, given our holding in Kiowa Tribe of Okla. v. Lewis, 777 F.2d 587, 590-92 (10th Cir. 1985), cert. denied, 479 U.S. 872 (1986), that section 1914 may not be used to challenge the legality of a state custody determination after a final decision

has been made in the state courts, the majority's proposal to require abstention until that final decision has been made will in essence strip section 1914 of any meaningful application whatsoever.

Abstention is only warranted in civil proceedings when "the State's interests in the proceedings are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil Co. v. Texaco, Inc. 481 U.S. 1, 11 (1987). Here, Congress has found that States have often failed to recognize federal concerns when conducting the civil proceedings at issue. Congress has therefore mandated Federal standards for use in such proceedings. Congress has further provided an enforcement mechanism through section 1914 to ensure that the State proceedings comply with these Federal standards. Given the clear Congressional statements that federal concerns are paramount in these proceedings, we are not at liberty to hold otherwise.

I would affirm on the basis of the district court's correct resolution of the merits.