FILED
United States Court of Appeals
Tenth Circuit

**January 9, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GILBERT SANCHEZ, Personal
Representative of the Estate of MIKE
SANCHEZ, Deceased,

      Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A., and
CARMEN M. ALCANTAR, ISIDRO
R. ALCANTAR,

      Defendants-Appellees.

No. 08-2148

(D.C. No. 6:07-CV-01180-BB-RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, MURPHY,** and **HARTZ**, Circuit Judges.

---

Gilbert Sanchez, the personal representative of the estate of Mike Sanchez,

appeals the district court's order dismissing this action for lack of jurisdiction.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

I.

The original plaintiff in this case, Mike Sanchez, was a World War II veteran and New Mexico resident. In approximately March of 2006, following the death of his wife and a hospitalization of his own, Sanchez concluded he would need familial assistance with his finances. To accomplish this goal, Sanchez and his two adult sons, Joe and Gilbert Sanchez, went to Wells Fargo Bank (Wells Fargo), where Sanchez maintained accounts, and requested that Joe and Gilbert be listed as "co-signers" on Sanchez's accounts. Wells Fargo, in response, closed Sanchez's original accounts and created new checking and savings accounts listing Sanchez as the "Primary Joint Owner" and Sanchez's sons as "Secondary Joint Owners."

In approximately October of 2006, Carmen and Isidro Alcantar, judgment creditors of Joe Sanchez, filed in New Mexico state court a garnishment proceeding naming Joe Sanchez as the judgment debtor and Wells Fargo as the garnishee. The state district court subsequently issued a writ of garnishment to Wells Fargo, which in turn placed a hold on the funds contained in the jointly-owned bank accounts. Sanchez intervened in the action to contest the propriety of the garnishment, claiming he was the sole owner of the monies contained in the accounts. In doing so, Sanchez filed a complaint in intervention against Wells Fargo asserting claims for conversion, breach of fiduciary duty, negligence and negligence per se. Wells Fargo filed a cross claim for interpleader. On August 7,

-2-

2007, the state district court granted Wells Fargo's interpleader claim, effectively discharging it from any liability to any of the parties in the state action, except as to the allegations pled by Mike Sanchez. Wells Fargo in turn deposited the monies from the accounts with the state district court.

On September 6, 2007, Sanchez's attorney filed a verified petition for writ of superintending control and request for stay with the Supreme Court of New Mexico. The petition effectively sought supervision of the state court proceedings or, alternatively, assignment of a new judge to preside over the state court proceedings. On October 25, 2007, the Supreme Court of New Mexico denied Sanchez's petition. Sanchez moved for reconsideration, but that request was denied on November 7, 2007.

On November 27, 2007, while the state garnishment proceeding remained pending, Sanchez filed the instant action against Wells Fargo and the Alcantars. In his complaint, Sanchez alleged that the monies contained in the garnished accounts were derived solely from federal government benefits that were not subject to garnishment. In turn, Sanchez claimed that Wells Fargo and the Alcantars acted jointly to wrongfully convert the monies in violation of federal law and the Constitution, and that Wells Fargo and the Alcantars were liable pursuant to 42 U.S.C. § 1983 because they conspired with the state district court to convert the monies. Sanchez's complaint sought, in pertinent part, an order enjoining the Alcantars from pursuing their garnishment action and Wells Fargo

-3-

from relinquishing the monies at issue to the state district court. Wells Fargo and the Alcantars moved to dismiss, arguing, in part, that the district court lacked subject matter jurisdiction. The district court ultimately granted the motions and dismissed the action without prejudice. In doing so, the district court *sua sponte* concluded that the Younger[1] abstention doctrine required the dismissal of Sanchez's complaint.

Sanchez filed a timely notice of appeal from the district court's order of dismissal. During the pendency of this appeal, Sanchez died. Pursuant to the order of this court, Gilbert Sanchez, as personal representative of Sanchez's estate, has since been substituted as the appellant.

According to documentation submitted by Wells Fargo in its motion to take judicial notice, the state garnishment proceeding has now been concluded in state district court. In particular, the state district court granted summary judgment in favor of Wells Fargo on all of Sanchez's claims, but denied Wells Fargo's request for attorneys' fees. Although it is not entirely clear from appellant's opening brief, he appears to suggest that he has appealed or will appeal the state district court's ruling.

II.

Appellant asserts a number of challenges to the district court's order of

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

dismissal. For the reasons outlined below, we reject all of those challenges and affirm the judgment of the district court.

### A. *District court's authority to sua sponte address the Younger doctrine*

Appellant first argues that the district court erred by considering, *sua sponte*, the application of the Younger doctrine. More specifically, he argues that the Younger doctrine must be raised by the defendants or it is waived as a defense to the action. But these arguments are contrary to both Supreme Court and Tenth Circuit precedent, both of which have acknowledged the authority of a federal court to address application of the Younger doctrine *sua sponte*. See Bellotti v. Baird, 428 U.S. 132, 143 n. 10 (1976); Morrow v. Winslow, 94 F.3d 1386, 1390-91 (10th Cir. 1996). Further, this court has rejected the notion that defendants must raise the Younger doctrine in order to preserve its applicability. See Morrow, 94 F.3d at 1391 n.3.

### B. *District court's application of the Younger doctrine*

Appellant next contends that the district court erred in concluding that the requisite criteria for application of the Younger doctrine were present in this case. We review de novo the district court's decision to abstain. Roe No. 2 v. Ogden, 253 F.3d 1225, 1232 (10th Cir. 2001).

The Younger doctrine is based "on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of

state legal systems." Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997).

"To assure this end, Younger articulated a narrow exception now applied to state criminal, . . . civil, . . . or administrative proceedings . . . which commands a federal court to abstain from exercising jurisdiction when three conditions have been established." Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997). "First, there must be ongoing state criminal, civil, or administrative proceedings." Id. "Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit." Id. "Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." Id.

Although he concedes there are ongoing state civil proceedings, appellant argues that those proceedings are not an adequate forum to hear the claims asserted in this federal lawsuit. In particular, he argues "there is no guarantee that [he] will win the state court appeal," and that appeal "may require in excess of three years." Aplt. Br. at 27. "In addition," he argues, "should [he] win the state appeal, his state case will be remanded to the same judge that ruled consistently, in contravention of the law and facts in favor of the same Defendants in this case . . . ." Id. at 27-28. "Finally," he argues, "Defendants litigated the entire state case in bad faith." Id. at 30.

These arguments all miss the mark. We are aware of no authority holding that the potential lengthy pendency of a state civil appeal renders the state

proceedings inadequate for purposes of <u>Younger</u> abstention analysis. As for his assertions of bias and bad faith, appellant presumably can and will assert those claims in the state civil appeal and, if successful, appropriate action will presumably be taken by the state appellate court(s). Finally, and most importantly, appellant makes no attempt to refute the district court's conclusions, with which we agree, that "there appears to be no bar to Plaintiff's ability to raise his federal claims in the state court proceeding," and the "federal causes of action appear to be nothing more than an attempt to immediately appeal a state court judgment with which he disagrees." App., Tab 13 at 4.

Appellant also argues that the ongoing state proceedings do not involve important state interests. We again disagree. The § 1983 claims asserted in this federal action all hinge on the allegation that the state district court judge was biased against Sanchez and conspired with the defendants to defeat Sanchez's interest in the monies at issue. As we see it, the propriety of the state district court judge's actions is a matter of obvious state interest and one that is best left, at least in the first instance, for review by the state appellate courts. <u>See generally</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 (1987) (noting that a state interest is "important" for purposes of <u>Younger</u> abstention where the "exercise of the federal judicial power would disregard the comity between the States and the National Government"). Moreover, the ongoing state proceedings involve claims that are governed primarily, if not exclusively, by New Mexico state law.

### *C. Other arguments*

Appellant asserts three other arguments, none of which we find convincing. Appellant first argues that it was permissible for the district court to assert concurrent jurisdiction over Sanchez's claims because, by the time the district court dismissed those claims, Wells Fargo had returned the monies to Sanchez "and there was no necessity of bringing the res within the possession of" the district court. Aplt. Br. at 31. As outlined above, however, our conclusion that the district court correctly dismissed Sanchez's claims based on the <u>Younger</u> abstention doctrine does not hinge on the whereabouts of the monies at issue.

Appellant next argues that the district court erred by taking "the [factual] allegations in Defendants' motions to dismiss as true in its analysis." Aplt. Br. at 32. Appellant, however, fails to identify a single material fact that the district court allegedly misconstrued or explain how the district court's purported error impacted its <u>Younger</u> abstention analysis.

Lastly, appellant argues that the district court abused its discretion when it failed to rule on defendants' motions to dismiss "until after one-hundred-sixty-seven (167) days had passed since motion practice had concluded . . . ." Aplt. Br. at 33. The only authority appellant cites in support of this argument is a Cost and Delay Reduction Plan adopted in 1993 by the United States District Court for the District of New Mexico. As defendants have aptly noted, that Plan simply recommends that, whenever possible, dispositive motions should be ruled on and

an order entered within sixty days following oral argument or after the reply or the deadline for filing such reply. Thus, the fact that the district court in this case exceeded the recommended time frame does not necessarily mean that it abused its discretion, or otherwise acted improperly, in doing so.

Wells Fargo's motion to take judicial notice of state court orders and pleadings is GRANTED. The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge